Bettman *v.* Shadle.

## BETTMAN ET AL. *v.* SHADLE.

[No. 2,564. Filed April 27, 1899. Rehearing denied June 27, 1899.]

CONTRACTS.—*Receipts.*—*May be Explained by Parol Evidence.*—A rental receipt in the words "August 2, 1895, received of ·B.   *   *   $30, being a rental of one month's rent until September 2, 1895, in full of all claims from this date to September 2, 1895 " has none of the elements of a contract, and may be explained or contradicted by parol evidence. *pp. 542-545.*

INTERROGATORIES TO JURY.—*Practice.*—An interrogatory to the jury which asks for more than one fact is improper. *p. 545.*

SAME.—*Practice.*—In an action on a written lease the question as to whether certain papers introduced in evidence amounted to a release and cancelation of the lease is for the determination of the court. *p. 545.*

OIL AND GAS LEASE.—*Construction.*—*Surrender of Lease.*—A gas and oil lease contained a provision that lessee was to commence a well within one month from the execution of the lease, or in lieu thereof, pay lessor $2 per day until commenced, or surrender lease.

Bettman *v.* Shadle.

*Held,* that upon a surrender of the lease the payments contemplated up to the time of the surrender should be made, and, when so made, they should be in full satisfaction for any damages by reason of the failure of lessee to perform conditions of lease. *pp. 545-548.*

OIL AND GAS LEASE.—*Construction.—Rents.—Penalties.*—Where by the terms of a gas and oil lease, if a well was not commenced within one month from the date of the lease the lessee should pay $2 per day until commenced, and such well was to be completed within two months from the execution of the lease, and a second well was to be commenced within sixty days from the completion of the first well, or $2 per day paid until commenced, the time when the rental should begin for failure to commence the second well is fixed, and such payment is not dependent upon a contingency that never happened. *p. 549.*

From the Allen Circuit Court. *Affirmed.*

*Mock & Sons,* for appellants.

*Breen & Morris* and *Spencer & Branyan,* for appellee.

ROBINSON, J.—The special verdict in this case shows that on February 20, 1895, appellee leased to Henry B. Huffman and Andrew Foust certain premises for gas and oil purposes, for five years, and as long as gas and oil could be produced in paying quantities; that the lease contained, among other provisions, the following: "It is agreed that, if gas is found in paying quantities, the consideration in full to the party of the first part shall be $100 per annum for the gas from each well, when utilized off the premises. The party of the second part agrees to commence a well upon the lease within one month from the execution of this lease, or, in lieu thereof, pay to the party of the first part $2 per day until commenced, or surrender lease. Second party agrees to * * * complete well number one, in two months from execution of this lease, or forfeit the same; well number two to be commenced within sixty days from the completion of well number one, or $2 per day until commenced, or forfeit the south ten acres; unavoidable accidents excepted in all cases. * * * And it is further agreed that the second party, his heirs or assigns, shall have the right at any time to surrender up this lease, and be released from all moneys due,

and conditions unfulfilled then, and from that time this lease and agreement shall be null and void, and no longer binding on either party, and the payment which shall have been made be held by the party of the first part as the full stipulated damages for the non-fulfilment of the foregoing contract; that all conditions between the parties hereunto shall extend to their heirs, executors, and assigns." That on March 11, 1895, Huffman and Foust assigned the lease to C. C. Shepp by indorsement thereon, in writing; on May 28, 1895, Shepp assigned the lease, by indorsement thereon, to appellants, who held the lease when this suit was commenced on September 7, 1895; that the lease was not canceled nor was the lease or the premises surrendered to appellee, nor was any well begun on the premises before suit was brought; that appellee received from appellants $30 as rent on August 2, 1895, and gave therefor the following receipt: "August 2, 1895. Received of Bettman, Watson and Bernheimer, $30, being a rental of one month's rent until September 2, 1895, in full of all claims from this date up to September 2, 1895." That appellee did not agree with appellants on August 2, 1895, to release any sum due him under the lease for rent prior to August 2, 1895; that appellants never paid any rent other than the $30; that appellee, August 2, 1895, agreed with C. C. Shepp, acting for appellants, to accept $30 as rent, on the express condition that appellants should proceed on the following week to begin a well on the premises, and complete the same within the month following; and on that date appellee agreed in consideration that appellants would begin a well one week thereafter, and complete the same, to accept the $30 in full of all claims that might accrue to him from August 2 to September 2; that appellants owned, or had an interest in, the lease before August 2; that the lease was not assigned to them on that date; that the payment of the $30 by appellants did not satisfy all that was due from appellants up to September 2; that appellants were prevented from September 7, 1895, from drilling on the premises.

The second, third, and fourth errors assigned question the court's action in rendering judgment in appellee's favor on the special verdict. It is argued that the receipt set out in the verdict is contractual and could not be contradicted by parol evidence. Ordinarily a receipt does not amount to a contract, but it may be so drawn as to be a contract. The receipt in question is not a contract. Nor can it be held to be a receipt in full of all claims up to its date. It purports on its face to be in full only of all claims between its date and September 2. It has none of the elements of a contract, and may be explained or contradicted by parol evidence. It is only *prima facie* evidence of the statements it contains, and not conclusive. *Fox* v. *Cox,* 20 Ind. App. 61; *Ohio, etc., R. Co.* v. *Crumbo,* 4 Ind. App. 456; *Adams* v. *Davis,* 109 Ind. 10; *Scott* v. *Scott,* 105 Ind. 584.

One of the interrogatories was as follows: "23. Did the defendants Bettman, Watson, and Bernheimer bring the lease sued on into court with a written release and cancelation of said lease, duly acknowledged, and file the same with their answer on the 11th day of May, 1896? Answer. No evidence." It is argued that this answer is contrary to the evidence because the record shows that the answer and cancelation filed therewith were read in evidence. It was not for the jury to say whether the papers introduced in evidence amounted to a release and cancelation, and whether they were duly acknowledged. The question not only asks for more than a single fact, but asks for a conclusion. It was for the court to say what effect certain written instruments should have, and whether they had been duly executed. The question was improperly put to the jury. *Robbins* v. *Spencer,* 121 Ind. 594; *Ohm* v. *Yung,* 63 Ind. 432; *Comer* v. *Himes,* 49 Ind. 482.

It is argued by appellants that judgment should not have been rendered for appellee for the reason that after this action was brought they surrendered the lease and were thereby

by its terms released from the payment of any sum owing when suit was brought. In construing a contract, it is the duty of a court to adopt that construction that will give effect to all its provisions, if that can be done. The intention of the parties at the time the contract was made, gathered from all the language used, is the object to be kept in view. If from all the terms used in the instrument a construction can be given that will produce reasonable results, that construction must be adopted. In *Leatherman* v. *Oliver*, 151 Pa. St. 646, 25 Atl. 309, in speaking of an oil lease, the court said: "In considering the legal effect of the anomalous provision in the lease before us, two well established rules of construction should be borne in mind. One of them is, that words should be taken most strongly against him whose words they are; the other asserts, that between two or more conflicting constructions of an instrument, that one should ordinarily be adopted that will sustain most of its provisions." The lease in the case at bar provides that the lessees should begin a well within one month from the date of the lease, and upon failure to do so, should pay the lessor $2 per day until commenced, or surrender the lease; that is, if the lessees did not begin a well as agreed, or did not surrender the lease, they agreed to pay $2 per day for such default. The consideration for this payment was the right the lessees still retained to dig wells upon the premises, and this right continued from the date of the lease until suit was brought. It is perfectly clear that the lease contemplates that the lessees were to pay something for this privilege which they retained. The lease further provides that the lessees are to pay one-eighth of all petroleum obtained, and $100 per annum for each gas well. After providing for all these payments, the lease, as we have seen, provides that the lessees have the right at any time to surrender the lease, and be released from all moneys due and conditions unfulfilled, then, and from that time, the lease to be void; and the payment which shall have been made shall be the full stipulated damages for the

non-fulfilment of the contract.   Shall this be construed to mean that the lessees had the right at any time to cancel what they then owed by surrendering the lease?   We think not. When the parties executed the contract, they contemplated its fulfilment.   The lessees expected to pay something, and the lessor expected to receive something.   The clause must be held to refer to the future, and not to the past.   If surrendering the lease released the lessees from moneys due and conditions unfulfilled, why provide that the payment which should have been made should be the full stipulated damages for its non-fulfilment?   Why provide that the lease should be null and void from that time on, if the lessees had the power at any time to declare it null from the beginning? What was the consideration for the contract if the lessees had such power?   What "payment" is referred to?   Clearly, what appellants agreed in the lease to pay.   The "payment which shall have been made" can mean nothing except the payment of all that was due when the surrender is made. The lessees promised to pay it.   They promised to pay it when due.   The $2 per day was due each day.   No default was contemplated.   The lease, taking it as a whole, must be held to mean that, upon a surrender of the lease, the payments contemplated therein up to the time of the surrender should be made, and, when so made, they should be in full satisfaction for any damages by reason of the non-fulfilment of the lease.   This gives effect to all the substantial provisions of the lease.   To adopt the construction for which counsel contend, that, upon surrender, all past rentals are lost, is to say that some of the substantial provisions of the lease mean nothing.   It contains a plain, unequivocal promise or covenant to begin a well at a certain time, or to pay a certain rental.   The lessees' liability is fixed.   The right had been held.   The rent had accrued.   It is the duty of the court to give the contract a construction that will make it effective if possible.   To adopt appellants' view is, in effect, to say that there was no consideration for the contract; that it was

not binding upon either party. The parties had acted upon it; had treated it as valid. And while the conduct of the parties is not conclusive, yet, it may be looked to in construing a contract that is ambiguous. The lessees had the right to surrender the lease at any time, but such surrender was not a payment of what they then owed. The construction we have given the lease is not importing anything into it, nor is it making a new contract for the parties; and it is the construction which most reasonably follows from a consideration of all the terms and conditions which the parties themselves have put into it. See *Edmonds* v. *Mounsey*, 15 Ind. App. 399, 404; *Columbian Oil Co* v. *Blake*, 13 Ind. App. 680; *Letherman* v. *Oliver*, 151 Pa. St. 646; *Woodland Oil Co.* v. *Crawford* (Ohio), 44 N. E. 1093, 34 L. R. A. 62; *Ogden* v. *Hatsy*, 145 Pa. St. 640, 23 Atl. 334; *Galey* v. *Killerman*, 123 Pa. St. 491, 16 Atl. 474; *Wills* v. *Manufacturers, etc., Co.*, 130 Pa. St. 222, 18 Atl. 721, 5 L. R. A. 603; *Ray* v. *West Pennsylvania, etc., Co.*, 138 Pa. St. 576, 20 Atl. 1065, 5 L. R. A. 290; *Clark* v. *Jones*, 1 Denio (N. Y.) 516. It is not claimed that appellants ever surrendered the lease prior to the bringing of the suit, and the complaint seeks to recover rents only up to the time of its filing. Conceding, without deciding, that a valid release was filed with the answer, under the construction we have given the lease such release could have no bearing upon the right to recover rents up to the time of bringing suit.

It is argued that the answer of the jury that appellants had an interest in the lease before August 2, 1895, is contrary to the evidence. The assignments on the lease show that it was assigned by the original lessee to Shepp, March 11, 1895, and was assigned by him to appellants, May 28, 1895. There is evidence that from February, 1895, Shepp represented appellants, as their agent; that on August 2, as agent for appellants, he gave appellee appellants' check for $30, for which the receipt mentioned was given; and that, at the time, Shepp told appellee he had bought the lease, and

had sold it to appellants; that it was assigned to him, and he assigned it over to appellants. Taking this evidence, in connection with the assignment itself, it can not be said there was no evidence supporting the answer to the interrogatory.

Appellants' motion for a new trial, as a matter of right, was overruled, and this ruling is assigned as error. Appellants filed a disclaimer in which they disclaimed any interest in the lease or in any matter connected therewith. The only question then for trial was whether they were liable for rent up to the time of filing the complaint. It is true the complaint asks a money judgment and a cancelation of the lease, but the judgment rendered was for money only. There was no decree canceling the lease. The only question tried was whether appellants were liable for rent up to the time of bringing the suit. The jury found as a fact that appellants were prevented from the day the suit was filed from drilling on the premises.

It is assigned as a cause for a new trial that the amount of recovery is too large. By the terms of the lease, if a well was not commenced within one month from the date of the lease, the lessees should pay $2 per day until commenced. This well was to be completed within two months from the execution of the lease. A second well was to be commenced within sixty days from the completion of the first well, or $2 per day paid until commenced. It will be seen that the time when the rental for failure to commence the second well shall begin is fixed. It can not be said that its payment was dependent upon a contingency that never happened. The time for the completion of the first well is fixed, and from that fixed time a certain rental was to be paid for failure to commence the second well. Appellee was entitled to rent up to the time of filing the suit, September 7, 1895. There is evidence that the $30 was in full for rentals for the month of August, provided the lessees would commence putting down a well the following week, and continue from day to day until completed; that the receipt was to cover nothing else;

that no well was begun, nor were any preparations made for beginning a well before September 7, 1895. There is evidence to authorize the judgment for $400. There is no error in the record. Judgment affirmed.

Henley, J., absent.