## FORKER ET AL. *v.* BERKES.

[No. 16,710. Filed December 22, 1941. Rehearing denied March 6, 1942. Transfer denied April 6, 1942.]

*Rex S. Emerick* and *Glenn E. Thrapp,* both of Kendallville, for appellants.

*Ralph W. Probst,* of Kendallville, and *Mountz & Mountz,* of Garrett, for appellee.

BLESSING, J.—Appellee, plaintiff below, filed his verified claim in the estate of Columbia Glosser, deceased, in which he alleged that the estate was indebted to him as a result of payment by him of certain items such as fuel, kerosene, and medical bills for decedent in her lifetime. The claim was disallowed and transferred to the trial docket, where, after amendment, it was tried before a jury, resulting in a verdict in favor of appellee in the sum of $700, upon which judgment was entered by the court. Appellants' motion for new trial was overruled, and this appeal followed.

The errors assigned, and not expressly waived by appellants, under the assigned error in overruling the motion for new trial, are the specifications therein that:

1. The verdict is not sustained by sufficient evidence.
2. The verdict is contrary to law.
3. The court erred in refusing to give each of appellants' instructions Nos. 2, 7, 8, 9, 10, and 12.
4. The court erred in giving of its own motion instruction No. 5, and;
5. The court erred in permitting the admission of certain evidence.

At the outset, we are confronted with the statement of appellee that, since the judgment was joint as to the

appellants, as administratrices, their separate and several motion for new trial and exceptions to the overruling thereof cannot be presented under a joint assignment of error in this court. However, we cannot agree with this contention. In the case of *Johnson* v. *Samuels* (1917), 186 Ind. 56, 61, 114 N. E. 977, the court, after making the observation that such a rule is highly technical and serves more to confound than otherwise, and after expressing the opinion that the rule should be abrogated, stated the correct rule as follows:

> "If all persons against whom a verdict has been returned file a motion for a new trial assigning the same causes therefor, either jointly or severally, and a ruling is had and exceptions taken by all parties against whom the ruling is made, either jointly or severally, the question is presented to this court on an assignment of errors, whether made by one or all of the parties excepting to such ruling, either in a joint or a separate assignment."

The assignment of error that the court erred in overruling the motion for new trial being sufficient, we therefore proceed to a consideration of the specifications of error therein assigned.

It appears from the record that appellee was a neighbor of Columbia Glosser, deceased, and that after the death of deceased's husband she moved into the home of appellee where she resided until she and appellee moved into the home of deceased, and that appellee continued to reside there until deceased's death. It further appears that decedent was 90 years of age at the time of her death and that appellee was 76 years of age at the time of the trial. During this time, and within six years of decedent's death, appellee paid out money for the use and benefit of decedent, which constituted the basis of the claim in the estate.

While there is evidence sustaining the verdict based upon such payments by appellee, yet appellants rely upon a certain writing executed by and between the appellee and the appellants, individually, before appellants were appointed administratrices of the estate. This writing, executed in the office of an attorney some time after the death of Columbia Glosser, and introduced in evidence, is as follows:

"This agreement made this 2nd day of July, 1938, by and between John Berkes, first party, and Edith Forker and Gertie Forker, second parties, Witnesseth: That whereas, the said first party has for some years resided with Columbia Glosser, deceased, mother of said second parties, on her farm in Allen Township, Noble County, Indiana, and,

Whereas, it is desired to make a settlement of any and all claims to date and to arrange for said first party to continue to stay on said farm for some time in the future,

Therefore,

It is agreed, that the first party has and asserts no claim whatever against the said second parties nor against the estate of said Columbia Glosser, deceased, and said first party now states and acknowledges that he has been fully paid and settled with in every respect for any and all services he has rendered, and for any and all things for which he might otherwise make any claim whatever, and he acknowledges that he has been fully paid, satisfied and all rights and claims on his part to date fully compromised and settled.

And it is further agreed that the said first party may continue to reside in the dwelling house on the said farm (the rest of the farm being otherwise rented and under the control of the second parties) it being agreed that the said first party shall attend to the livestock now on the premises belonging to the estate of Columbia Glosser, he, the said first party, performing the ordinary chores in the customary way, and receiving in return the

right to occupy said dwelling under this agreement, and said first party may, during such period, have for his own use provisions now on said premises and may use the eggs produced thereon during such time.

Under this agreement neither party hereto shall have any claim against the other, and the services rendered by the first party and the right to use and occupy said premises shall be held of equal value and affect one against the other. This agreement shall continue until terminated at the will of either party."

Appellants earnestly contend that the execution of this instrument is a bar to recovery in this action, unless fraud or mistake be shown, and very ably present the view that such instrument being in the nature of a compromise settlement no action could be maintained upon the original claim so compromised while the compromise and settlement remained unrescinded, and that such instrument made for the benefit of a third party (the estate), although not a party to it, may be enforced by such third party, and that a waiver and release of a claim against a third party may form the consideration for the execution of the contract. Upon this view, it is insisted that the court erred in permitting appellee to testify as to whether he knew the contents of the instrument when he executed it and whether anything was said to him at that time relative to his releasing any claim against the estate for money paid out by him for decedent.

However, we are not in accord with appellants' interpretation and construction of the instrument in question, for it clearly contains two distinct and separate transactions, viz.: (1) A statement by appellee that he had been paid and settled with for services rendered and things done by him in the past; and (2) an agreement in the nature of a

tenancy at will pertaining to the occupancy of the dwelling house and use of certain provisions in return for which chores were to be performed and services rendered. The first portion of the writing was a mere statement regarding past settlement with appellee and was in the nature of a receipt acknowledging payment of claims that appellee held against the estate of Columbia Glosser. Thereafter is recited an agreement pertaining to the use of the dwelling house in the future, wherein it was agreed that "the services rendered" and the "right to use and occupy said premises shall be held of equal value and effect one against the other" which agreement "shall continue until terminated at the will of either party." It is clear that the instrument itself did not presently compromise and settle claims of appellee which he may have had and could assert against the estate, but merely recited that settlement had been previously made with him. No consideration recited therein went to the compromise of any such claims, but the consideration therein expressed pertained solely to the agreement as to future tenancy of the dwelling house. As to claims of appellee, it was merely stated that appellee "acknowledges that he has been fully paid and settled with." It is significant to note that it is provided by the agreement that, "neither party hereto shall have any claim against the other, and the services rendered by the first party and the right to use and occupy said premises shall be held of equal value and affect one against the other." Such provision clearly disclosed that all consideration expressed pertained alone to the future tenancy, as a result of which *neither party to the instrument* should have a claim against the other. This tenancy, of course, was subject to termination at will, for a tenancy so executed by the heirs and which involved the possession

and use of personal property of the decedent would not be binding on the personal representative of the estate subsequently appointed.

A compromise has been defined as " 'A settlement of differences by mutual concessions' " or " 'An adjustment of differences of matters in dispute . . . by mutual concessions.' "  *Wolf Hotel Co.* v. *Parker* (1928), 87 Ind. App. 333, 158 N. E. 294.

For the reason that the instrument, as to the release of claims, did not disclose any settlement as to compromise of such claims by mutual concession, and did not recite any consideration for a release of claims, if any there was, nor did it recite any concessions therefor, if any there were, it is obvious that it did not constitute a compromise and settlement of claims, but was a mere acknowledgement that claims had been paid, and as to them was in the nature of a receipt. The agreement pertaining to tenancy was one determining the rights of parties in apparent contemplation of the appointment of a personal representative, and such agreement had nothing to do with the payment of or release of appellee's claim.  The court might well have instructed the jury that such portion of the instrument as constituted the agreement relating to the tenancy and the right of termination thereof should not be considered as evidence in the case.

Since the portion of the instrument relied upon as defeating the claim was in the nature of a receipt for payment of claims, it constituted a defense, and appellee was not required to plead it as a compromise together with allegations showing its rescission, in order to maintain a succinct claim against the estate.  Appellants did not plead the instrument, but chose to have the claim tried without the filing of an answer, as they had a right to do, under the provi-

sions of § 6-1015, Burns' 1933. No answer having been filed, no reply by appellee was contemplated. Hence, it was proper to introduce the instrument in evidence as a matter of defense, and thereafter the question of payment became one of fact.

Complaint is made of the action of the trial court in permitting parol testimony concerning the execution of this instrument, and it is contended that it was error to allow appellee to testify as to whether he had released his claims against the estate other than whatever claim he might have had for services rendered by him, and as to whether he understood the instrument to mean that he had so released his claims other than that for services.

But treating that portion of the instrument reciting an acknowledgement of payment of claims as a receipt, it was proper to permit parol evidence to explain it. *Markel's Administrator* v. *Spitler's Administrator* (1867), 28 Ind. 488; *Beedle* v. *State, ex rel. Small* (1878), 62 Ind. 26; *Stewart* v. *Armel* (1878), 62 Ind. 593; *Lapping* v. *Duffy* (1879), 65 Ind. 229; *Lash* v. *Rendell* (1880), 72 Ind. 475; *Scott* v. *Scott* (1886), 105 Ind. 584, 5 N. E. 397; *Bettman* v. *Shadle* (1899), 22 Ind. App. 542, 53 N. E. 662. Even if the instrument, as it pertained to the acknowledgement of past payment for asserted claims, could be considered as a contract, we are of the opinion that parol evidence would have been admissible to explain it, since the rule excluding parol evidence does not apply to one not a party to the contract (the estate) in such a case. See *State Highway Commission* v. *Wilhite* (1941), 218 Ind. 177, 31 N. E. (2d) 281.

Since there was ample evidence to the effect that appellee had paid the items upon which the claim was

based, and evidence from which the jury could conclude that he had not been paid therefor and had not released his claim for such items, the evidence was sufficient to support the verdict; and the verdict was not contrary to law as against the contention that such claims were released. The evidence was sufficient to justify the conclusion that appellee had released only his claim for services rendered by him for the reason that he considered the board and shelter furnished him by decedent as payment thereof. What has been said disposes of the alleged error in the admission of evidence. The burden of proving payment of the claim was on appellants, and appellee was not required to prove that the claim had not been paid. *Winston* v. *Kirkpatrick* (1941), 110 Ind. App. 183, 37 N. E. (2d) 18, and authorities cited. The jury decided that payment had not been proved, and it is not then within the province of this court to arrive at a contrary decision upon conflicting evidence.

Appellants also contended that the court erred in refusing to give each of appellants' requested instructions numbered 2, 7, 8, 9, 10, and 12. However, none of such instructions except numbers 2, 7, and 8 were signed by appellants or their counsel, and it was therefore not error to refuse to give them. It is not error to refuse to give instructions that are not signed, even though the request that the same be given is signed. Nor is the signing of exceptions at the end of an instruction or at the close of all of the instructions a signing of instructions requested. *Wiley* v. *State* (1929), 200 Ind. 572, 165 N. E. 313; *Burke* v. *Middlesworth* (1931), 92 Ind. App. 394, 174 N. E. 432.

Appellants' tendered instruction No. 2 recited, that if the jury believed that the parties executed the instru-

ment above discussed then its verdict should be for appellants. This mandatory instruction would require a finding against appellee by proof of the mere execution of the instrument, and for the reasons above stated, it was not error to refuse it. It would have been proper to instruct the jury relative to such instrument; but if appellants desired such instructions, it was their duty to properly tender correct instructions.

Among the items set forth in appellee's claim for money expended for appellants' decedent at her request, was an item of $108 for a telephone placed in the decedent's home. Appellants' requested instruction number 7 was to the effect that if the jury found from the evidence that such telephone was listed in the name of the claimant then the jury would have a right to presume that such telephone was for the exclusive use of the claimant, and under such circumstances the claimant would have no right to recover for the moneys paid by him for the use of the telephone unless such evidence was overcome by other creditable evidence. This instruction is too broad. The fact that the telephone was in appellee's name would raise no presumption that it was installed for the exclusive use of the claimant. It was a fact to be considered, together with all of the other facts bearing upon this item and together with the reasonable inferences to be drawn from the facts established, as to whether or not the telephone had been installed at the request of the decedent and an item for which the claimant was entitled to recover. In view of the instructions given by the court, there was no error in the refusal to give this instruction.

Instruction number 8 tendered by the appellant was

sufficiently covered by the instructions given by the court, and no error resulted from the refusal to give this instruction.

Finally, appellants complain of instruction No. 5 given by the court of its own motion. Such instruction, in addition to stating that the burden of proof was upon appellee to establish by a preponderance of the evidence some kind of contract between him and deceased for payment to him by deceased of the sums of money allegedly paid out for her use and benefit during her life time, continued as follows:

> "If you find from the evidence in this action that the claimant paid out such sums of money to the persons and in the amounts averred in his claim, out of his own monies, and that the deceased either requested him to pay said sums or said sums were paid with her knowledge and consent, and she accepted the benefits of such sums, so paid, and were paid under such circumstances as it could be reasonably said that the claimant at the time expected to be repaid said sums by the deceased and under such circumstances that it can be reasonably inferred that the deceased intended and expected to reimburse the claimant for such sums, if any, so expended and paid out by him for her use and benefit, then the law will imply a contract on the part of the deceased to reimburse the claimant for said sums so paid by him."

The objection urged is that the jury was permitted to imply both a request on the part of the deceased and a subsequent promise on her part to pay claimant in determining whether an implied contract existed between decedent and appellee, and that the law governing implied contracts as applied to the case was not correctly stated. However, we believe that the instruction fairly stated the correct rule applicable to the facts in issue. In the case of *Winston* v. *Kirk-*

*patrick, supra,* wherein a judgment based on a claim founded on an implied contract by decedent to pay for room rent, nursing care, board, washing and ironing, and money loaned her, was upheld, this court said: " 'To warrant the finding of such contract, the elements of intention to pay on the one hand and expectation of compensation on the other must be found to exist, but such elements, like other ultimate facts, may be inferred from the relation and situation of the parties, the nature and character of the services rendered, and any other facts and circumstances which may reasonably be said to throw any light upon the question.' "

In the case of *Hays* v. *McConnell* (1873), 42 Ind. 285, 287, the Supreme Court said: " 'a great mass of human transactions depends upon implied contracts; upon contracts which are not written, but which grow out of the acts of the parties. In such cases, the parties are supposed to have made those stipulations which, as honest, fair and just men, they ought to have made' "; and "when *ex equo* and *bono* money is due, though there be no express promise to pay, that the law will imply a promise."

There was evidence to the effect that at the death of decedent's husband she was left with many debts, and that during the time claimant resided with her she was heavily indebted and unable to pay bills as they were due; that she asked claimant to help her out on the bills that were coming in to be paid and told him that whatever money he was putting into them, she didn't want him to lose any of that, and wanted to see that he got his money back. One witness testified that deceased told her: "I asked whether he (claimant) would help me out in paying these bills as they came along because I wasn't financially fixed to do it. He promised he would do it and I will see that you

don't lose one red penny of your money." There was further evidence to the effect that decedent had stated that she didn't know what she would have done if it had not been for claimant, and that she would see he didn't lose any of his money he had invested; that claimant was helping her "and if she couldn't pay it, the girls would or the estate would be there."

From the evidence set forth and other evidence as disclosed by the record, the jury was warranted in concluding that at the time appellee went into the home of decedent and at the time he paid the obligations decedent requested such payments and intended to pay him, and that he intended to receive reimbursement for the money so paid. The instruction is not subject to the objection urged, and was proper under the evidence.

Finding no reversible error, the judgment of the lower court is affirmed.

NOTE.—Reported in 38 N. E. (2d) 296.