## PETERS, ADMINISTRATOR *v.* HANLIN

[No. 27,695. Filed May 15, 1942.]

*Albert A. Abromson, Wheeler Ashcraft, Morton S. Hawkins,* and *Frank B. Jaqua,* all of Portland, for appellant.

*Charles E. Schwartz* and *Wayne W. Hinkle,* both of Portland, for appellee.

RICHMAN, J.—Appellant says that he "bases his whole claim to have the judgment of the court below reversed upon the doctrine of res judicata". The facts are not in dispute.

Mary S. Franks was mentally incompetent and under guardianship. She was cared for by appellee, her sister. In 1934 on appellee's petition asking allowance for past services "and that the guardian herein be ordered to pay the same and that the court fix the compensation to be paid to this petitioner for services to be hereinafter rendered," an order was entered that the guardian pay a fixed sum for past services and "that the guardian herein be and he is hereby authorized and directed to expend the sum of $6.00 per week for service rendered to the ward herein, not to include clothing and doctor bills, and until further order of the court."

Appellee continued to care for her sister until her death on July 4, 1940. The guardian's funds from income were limited and nó payments were made by the guardian to appellee after 1935. The last two years of her life Miss Franks was afflicted with cancer.

During that time she fell and broke her hip. After the accident appellee told the guardian that because the care was greater than when her sister was "up and around and helping wait on herself" appellee could not care for the ward for the same amount of money. But neither the guardian nor appellee applied to the court for any change in the order theretofore made.

After the death of Miss Franks, appellant qualified as administrator of her estate. Appellee filed her claim for services rendered decedent. She recovered judgment for $3,454.85, of which $567.85 was for unpaid balance of the fixed sum for past services allowed in 1934 including interest thereon, $612.00 was for services from September 15, 1936 to October 4, 1938, at the rate of $6.00 per week and $2,275.00 was for services from October 4, 1938, to July 4, 1940, at the rate of $25.00 per week. The last amount was made a preferred claim as expenses of last sickness.

In this appeal therefrom appellant contends that the order made in 1934 authorizing the guardian to pay $6.00 per week for future care of his ward was a judgment binding upon appellee, who was a party thereto, by which he is estopped from claiming any larger amount per week. The trial court correctly held otherwise.

We regard it as an interlocutory order made in view of existing conditions. By its terms it was not final but only "until further order of the Court." Upon change of conditions, appropriate provision might be made to meet the needs of the ward for it was not conclusive either as to the guardian, appellee or the court. When the order was made the ward was in good physical condition and able to wait upon herself and $6.00 evidently was considered reasonable compensation for her room and board. When she

became bedfast and helpless quite another situation was presented which was not within the contemplation of any one four years before. It is not contended that appellee was required to continue to care for her sister while she lived. The fact that she did so continue did not bind her to accept less than the reasonable value of the service rendered. If in 1938 when the ward become a helpless invalid, appellee had declined to serve at $6.00 per week, or at any other price, she could not have been compelled to do so. The guardian in that event would have been required to make other arrangements. His continuing duty was to provide reasonably for the ward's support in sickness or in health out of income, if possible, but with the right to resort to the principle of her estate if necessary.

While a guardian's expenditures are subject to the court's approval it need not be procured before the obligation is created. *Masters* v. *Jones* (1902), 158 Ind. 647, 650, 64 N. E. 213. This case also holds that approval need not be obtained nor the debt paid prior to the ward's death. If the obligation then remains unsatisfied it may be enforced against the ward's estate in the hands of an administrator.

The case of *Guthrie's Appeal* (1851), 16 Pa. St. 321, is relied upon by appellant and sought to be distinguished by appellee on a contractual basis. We think it more likely the decision was due to a rigid adherence to the letter of a statute by a court that was not given full equity jurisdiction until 1857 and in a state "in which there had been a traditional jealousy of chancery." Pound, Organization of Courts (1940), p. 134. The case was not put upon the doctrine of *res judicata* nor is it applicable to the facts before us.

Judgment affirmed.

NOTE.—Reported in 41 N. E. (2d) 604.