## BUUCK *v.* KRUCKEBERG.

[No. 18,008. Filed December 7, 1950. Rehearing dismissed May 17, 1951.]

*Flanagan & Miller*, of Ft. Wayne, for appellant.

*Clarence R. McNabb, Robert Parrish* and *Thomas A. Gallmeyer*, all of Ft. Wayne, for appellee.

CRUMPACKER, J.—On January 31, 1947, one Carrie Blume and her son Walter C. Buuck, the appellant herein, were the owners, as joint tenants with right of survivorship, of certain real estate in the city of Fort Wayne, Indiana, and on said day the said Carrie Blume

conveyed by deed her interest therein to the appellee Arthur C. Kruckeberg. Carrie Blume died on February 14, 1948, and shortly thereafter the appellee brought the suit against the appellant, his alleged co-tenant, to partition said real estate. The appellant, by way of counter-claim, sought the cancellation of the deed of January 31, 1947, which is the foundation of the appellee's right to partition, on the theory that: (1) it was procured through the exercise of undue influence; and (2) that at the time of its execution said Carrie Blume was a person of unsound mind. At a pre-trial conference it was agreed that the appellee was entitled to the partition of the real estate involved if the deed in question was valid as against the attack made upon it through the appellant's counter-claim. The court found the deed valid and decreed partition and such judgment is now challenged on the grounds that it is not sustained by sufficient evidence, that it is contrary to law and that it was arrived at through error of the court in excluding the entire testimony of a competent witness and permitting certain witnesses to testify in violation of privilege.

In support of his contention that the deed in suit was procured through the exercise of undue influence the appellant relies upon the fact that he is the only son and heir of Carrie Blume, that the appellee was a stranger to her fireside and paid no consideration for the property conveyed to him although it had a reasonable market value of $18,000 to $20,000 and that at the time said deed was executed Carrie Blume was seriously ill in mind and body. Such a situation, the appellant asserts, shocks the conscience of the court and imposition or undue influence must be inferred. If these facts presented the entire picture disclosed by the evidence we believe there would be merit in the appellant's contention, *Stayner* v. *Nye*

(1949), 227 Ind. 231, 85 N. E. 2d 496, but there appears to be more to the story than above indicated. The property involved consists of a 30 room house, and the lot upon which it stands, in which the appellant and his mother conducted a nursing home for elderly people. The appellee was a blood nephew of Carrie Blume and for some time did odd jobs about said home and in connection therewith performed occasional acts of kindness and consideration for his aunt's comfort and welfare. Prior to the execution of the deed in controversy the appellant had instituted an inquest into his mother's sanity the purpose of which was to commit her to an asylum and had also caused a receiver to be appointed for the business under which receiver he acted as manager to the exclusion of his mother. Whether this conduct on the part of the appellant toward his mother was necessary or justified we are not called upon to say. The circumstances, however, are such that in our opinion the question of undue influence was one of fact for the trial court and not one of law for us.

The appellant's position in reference to his mother's mental condition at the time she executed the disputed deed may be summarized as follows: All the medical experts who testified agreed that at such time Carrie Blume was mentally sick; that her trouble was a form of insanity known as paranoia which is characterized by seemingly normal conduct and conversation by one so afflicted; that the only evidence in the case tending to prove her of sound mind is the opinions of lay witnesses based on what they saw her do and what they heard her say and therefore such evidence is of no probative value and leaves the proof of her insanity undisputed.

Whatever merit there may be in this argument, we do not believe that the premise upon which it is based

is wholly supported by the record. When the ██ appellant instituted proceedings seeking an inquest concerning his mother's mental condition the court appointed a Dr. Dunstone to examine her and report as provided by law. His report is in the record and in substance states that he found Carrie Blume mentally alert. She showed no signs of delusions, hallucinations or aberrant behavior. Her memory was sound and her thinking clear. However, he found her, on the whole, basically irritable and unreasonable, potentially difficult to get along with and therefore concluded that she was "mentally ill." The test of mental capacity to make a deed is that the grantor shall have sufficient mind and memory to comprehend the nature and extent of his act and to understand the nature of the business in which he is engaged and to exercise his own will in reference thereto. *Keplinger* v. *Ward* (1946), 116 Ind. App. 517, 65 N. E. 2d 644. Even a paranoiac, says Dr. Welty, another member of the panel of physicians who examined Mrs. Blume at the inquest above mentioned, at times is perfectly normal. This evidence together with the testimony of the lay witnesses who considered her sane, is sufficient, in our opinion, to make the question of her mental capacity to meet the test above indicated on January 31, 1947, one of fact for the trial court and its finding in respect thereto is final.

During the course of the trial the appellant called one William L. Hofius as a witness. He testified that he is a minister and institutional chaplain of the Lutheran Church and as such has been conducting religious services and administering to the spiritual needs of institutional patients in Fort Wayne since 1941. During 1943 he made regular calls upon a member of the Lutheran Church who was confined in Carrie Blume's nursing home and thereby became well

acquainted with her. In 1944 she asked him to conduct a service there, consisting of a short message and a prayer, which he did and has been doing regularly ever since on each Thursday morning. Necessarily his contacts with Mrs. Blume were frequent and in 1946 he observed an emotional change in her. Her feeling toward the appellant, whom she had theretofore considered an ideal son and praised constantly, completely reversed itself and she never spoke of or referred to him unless compelled to do so by the nature of the conversation. He was the subject of violent tirades on her part and she quieted down only when he, the witness, spoke to her in German of her early childhood training. On this testimony the witness was asked to express his opinion as to the soundness of mind of Carrie Blume on the 31st day of January, 1947. The appellee objected to the question and upon the objection being sustained moved to strike out the entire testimony of the witness which motion was also sustained.

These rulings were made upon the theory that the testimony of the witness concerned matters communicated to him as a clergyman as to which he is made an incompetent witness by Burns' 1946 Replacement, § 2-1714. The statute, however, made the witness incompetent only as to "confessions or admissions" made to him "in course of discipline enjoined by" his church. It is apparent that the testimony of Rev. Hofius concerned neither a confession nor an admission on the part of Carrie Blume made to him in the course of any disciplinary action enjoined upon him by his church. He was clearly a competent witness and it was error to strike out his testimony and to refuse to receive his opinion based thereon as to Carrie Blume's soundness of mind. *Knight* v. *Lee* (1881), 80 Ind. 201; *Gillooley* v. *The State* (1877), 58 Ind. 182. The appellee tacitly admits this but insists

that the error was harmless because: (1) there is nothing in his testimony upon which any opinion as to her sanity could have been reasonably based; and (2) it is unreasonable to presume that the excluded testimony would have lead the court to a different conclusion as to the sanity of Carrie Blume.

Upon the question of the soundness· of mind of a grantor at the time of the execution of a deed the opinion of a lay witness, intimately acquainted with such grantor for a number of years, who has observed and conversed with her at various times before and after the time inquired about, is admissible. *Folger* v. *Barnard* (1920), 73 Ind. App. 523, 125 N. E. 460. This rule disposes of the appellee's first contention above indicated which it seems to us, goes to the weight to be given such an opinion rather than to its admissibility. After the court refused to permit Rev. Hofius to express his opinion as to Carrie Blume's sanity, the appellee attempted to cross-examine him on the testimony he had already given. At this point the court said, "Now Judge (referring to appellee's counsel) there is no probative evidence here of any kind or character. I don't see why there should be any cross-examination." And thereupon the entire testimony of the witness was stricken out. From this incident the appellee assumes that the evidence, had it remained in, would not have influenced the court's ultimate decision and indicates conclusively that any error involved was harmless. The record indicates that the court's rulings were prompted by the impression that it was dealing with a wholly incompetent witness and therefore any testimony he had given or might give could have no probative value. We find nothing in the record indicating that the court's attitude toward this evidence would have been such had it believed the witness to be competent and his testimony therefore

admissible. It is true that such testimony would have been cumulative in effect if it had remained in the record but that alone does not render its exclusion harmless. *State* v. *Hamer* (1937), 211 Ind. 570, 199 N. E. 589. Carrie Blume's mental condition was the major issue in the case and Rev. Hofius was one of the appellant's principal witnesses on that subject. He is intelligent and by training and experience in institutional work possesses special knowledge beyond that of the average lay witness. He had as good or better an opportunity of knowing Carrie Blume's mental condition at the time in question than any other disinterested witness in the case and his evidence should have been considered. Its exclusion was necessarily prejudicial.

R. C. Parrish and Ralph J. Miller, both of whom had been Carrie Blume's attorneys in various transactions during her lifetime, were permitted to testify concerning matters communicated to them in the course of their professional business. At her death Ralph J. Miller was appointed executor of her estate and was so acting when this case was tried below. In such capacity he made a formal waiver of privilege and relying upon such waiver the court heard testimony by both him and Parrish as to a long series of confidential communications. The appellant insists that this was error in that the statutory privilege protecting communications by a deceased person to her lawyer can be waived by her executor or other personal representative only in support of his trust. That Ralph J. Miller, in his representative capacity, is not a party to this suit and the property involved in no event can become an asset of Carrie Blume's estate and thereby a matter of her executor's concern in connection with his trust. This is true, it is urged, because the appellant and Carrie Blume held title to said property as joint tenants with right of survivorship and if the deed to the appellee

is void the appellant takes as such surviving joint tenant and not as the heir of his mother. If such deed is valid it passed title before Carrie Blume's death and her estate can have no interest in the property conveyed.

On the other hand the appellee contends that the right to prohibit disclosure of communications between attorney and client belongs to the client who may waive it at his pleasure and after his death the right of waiver accrues to the decedent's personal representative if the purpose of the waiver is to supply evidence which tends to uphold the decedent's acts.

In our opinion neither of these contentions is applicable to the facts in this case. It is true the right to prohibit the disclosure of confidential communications between attorney and client belongs to the client and after the client's death accrues to his personal representative, but where the client's interest has been assigned and the client or his estate cannot, in any event, have any interest in the matter assigned, it seems proper to say that the privilege is transferred to the assignee for the purpose of waiver, so far as the communications affect merely the realization of the transferred interest. VIII *Wigmore on Evidence,* § 2328 (3rd ed.). Under the issues here joined the appellee's realization of the interest transferred to him by the deed in dispute depends upon Carrie Blume's mental capacity to make it. Her estate can in no way be affected by the determination of that question. It therefore follows that the right to waive the exclusion of any confidential communications made by Carrie Blume to her lawyers which would tend to establish her mental capacity to make such deed rests with the appellee. We think the use of Parrish and Miller as witnesses by the appellee constitutes the exer-

cise of his right of waiver and the admission of their testimony was not error.

Because of the erroneous exclusion of the testimony of Rev. William L. Hofius the judgment is reversed and the cause remanded with instructions to sustain the appellant's motion for a new trial.

Royce, J., and Martin, J., concur with opinion.

## CONCURRING OPINION

ROYSE, J.—I agree with the majority that this case must be reversed because of error in excluding the testimony of the Rev. William L. Hofius. In my opinion this is all that is necessary or proper for this court to decide in this case. Sec. 2-3233, Burns' 1946 Replacement, providing in part as follows: "The Supreme Court may reverse or affirm the judgment below, in whole or in part, and remand the cause to the court below, but *the court shall not reverse the proceedings any further than to include the first error.*" (My emphasis).

I express no opinion as to the sufficiency of the evidence or on the tenuous reasoning (not relied upon or presented by the briefs of the parties) for holding the court did not err in permitting R. C. Parrish and Ralph Miller to testify as to matters communicated to them in the course of their professional relationship with the decedent.

Martin, J., concurs in this opinion.

NOTE.—Reported in 95 N. E. 2d 304.