The ESTATE OF Margaret H. PRICK-ETT, Deceased, Appellant–Respondent,

v.

Marilyn Prickett WOMERSLEY, Appellee–Petitioner.

No. 71A03–0710–CV–488.

Court of Appeals of Indiana.

April 10, 2008.

Jeffrey P. Smith, David K. Hawk, Hawk, Haynie, Kammeyer & Chickedantz LLP, Fort Wayne, IN, Attorneys for Appellant.

William L. Wilson, Bernard E. Edwards, Jr, Anderson, Agostino & Keller, P.C. South Bend, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-respondent Estate of Margaret H. Prickett (the Estate) brings this interlocutory appeal challenging the trial court's denial of its motion for summary judgment regarding appellee-petitioner Marilyn Prickett Womersley's claim for compensation and reimbursement "for the time that [she] spent attending to [her mother's] needs." Appellant's Br. p. 3–5. The Estate contends that Womersley's request for compensation was time-barred and that the trial court erred in denying its motion to strike certain affidavits that Womersley filed in opposition to the Estate's motion for summary judgment. Finally, the Estate argues that summary judgment should have been granted in its favor because the designated evidence established as a matter of law that that the services Womersley provided to Prickett were gratuitous. Finding no error, we affirm the judgment of the trial court.

*FACTS*

On February 14, 2003, Prickett died at the age of ninety-four. In October 1999, Prickett had been adjudged "an incapacitated person" by the St. Joseph County Probate Court. In particular, it was determined that Prickett was "an incapacitated person in that she [was] unable to manage in whole or in part her property and [was] unable to provide self-care." Appellant's App. p. 37. As a result, the probate court ordered the establishment of a guardianship with regard to Prickett's person and property.

First Source Bank (First Source) was appointed guardian of the estate, and Real Services, Inc., and M. Carolyn Prickett Gutman were appointed co-guardians over Prickett's person. During the pendency of the Guardianship, Womersley and Prickett lived together.

On May 15, 2003, Womersley filed a $545,967.78 claim against the Estate, alleging that she was entitled to:

1. Reimbursement for money that claimant spent out of pocket to take Margaret H. Prickett to Canada for the month of September 2000. ($2,701.40).

2. Reimbursement for money that claimant spent out of pocket over a twenty-nine (29) month period as requested by Margaret H. Prickett for various expenses and related matters. ($11,395.73).

3. Reimbursement for money that claimant spent out of pocket as requested by Margaret H. Prickett during the period from September 2001 to August 2002 for various expenses and related matters. ($13,271.81)

4. Reimbursement for money that claimant spent for rental expense for home in Tampa, Florida as requested by Margaret H. Prickett for the period of January 2000 through May 2000. ($4,300)

5. Reimbursement for money that claimant spent out of pocket for rental of an apartment in Fort Wayne, Indiana as requested by Margaret H. Prickett from mid-July 1999 through mid-August 1999. ($1637.45)

6. Legal fees incurred by claimant with respect to litigation as requested by Margaret H. Prickett concerning Margaret H. Prickett. ($4,281.40)

7. Claim for personal services rendered by claimant to and on behalf of Margaret H. Prickett as requested by Margaret H. Prickett for the period of one thousand one hundred forty-five (1,145 days) beginning in October 1999 and ending in January 2003. ($508,380.00)

*Id.* at 24–27. Womersley attached a document to the claim dated May 9, 2000, entitled "Statement of Margaret H. Prickett" (Statement), which was purportedly signed by Prickett. The statement read:

I, Margaret H. Prickett, realize that I am under Guardianship because of my age and that my daughter, Marilyn K. Prickett, has faithfully resided with me and has taken care of my needs since October 14, 1999.

It is my desire that my Guardian, First Source Bank of South Bend, Indiana compensate my daughter, Marilyn, at a rate that is comparable in the industry for home health care, and I further request the court to approve a fair and reasonable rate for all of the time that Marilyn has spent in attending to my needs.

*Id.* at 27. Following Prickett's death, the probate court entered an order on December 16, 2004, approving First Source's final

accounting and terminating the guardianship.

On December 13, 2006, the Estate filed a motion for summary judgment, alleging that Womersley's claim should be denied as a matter of law. More specifically, the Estate asserted that the expenditures and services that Womersley had provided to Prickett were gratuitous, and that her claims were time-barred.

Womersley opposed the Estate's summary judgment motion and submitted affidavits that were executed by attorney Edward Chapleau and his employee, Cheryl Stewart, as part of her designated evidence. Among other things, Chapleau asserted that he drafted the May 9, 2000, Statement "based upon [Prickett's] instructions." *Id.* at 66. Chapleau also averred that he was present when Prickett executed the Statement, and he believed that Prickett had been "well aware of what she was doing and her intentions when she executed the [S]tatement." *Id.* Chapleau attested that "nothing about [Prickett's] appearance or behavior on May 9, 2000 led [him] to question her competency." *Id.*

Stewart averred in her affidavit that she witnessed Prickett execute the May 9, 2000, Statement. *Id.* at 69. It was Stewart's opinion that, "based upon ... Prickett's statements and demeanor, [Prickett] was well aware of what she was doing and her intentions when she executed the Statement." *Id.*

Thereafter, the Estate moved to strike both affidavits, claiming that they were "inadmissible in that they contain testimony that is: (1) subject to the attorney-client privilege; and (2) conclusory ... and amounted to improper opinion." *Id.* at 71, 73. Following a hearing on June 7, 2007, the trial court denied the Estate's motion to strike the affidavits, and denied the motion for summary judgment.

In the summary judgment order, the trial court determined that the designated evidence supported a conclusion that Prickett requested services from Womersley and that it was Prickett's desire that Womersley would be paid for those services. The trial court also concluded that there was a genuine issue of material fact as to whether the services that Womersley provided to Prickett amounted to necessaries. Finally, the trial court determined that Womersley's claims were not time-barred because the mere fact that the claims were not settled and allowed by the probate court before the guardianship was terminated by Prickett's death should not deprive Womersley from enforcing her claims against the estate. In other words, the trial court found that whatever claim Womersley had against the guardianship would automatically have transferred to the estate "inasmuch as ... Prickett died before the final account in the guardianship was approved." *Id.* at 14. At the Estate's request, the trial court certified its order for interlocutory appeal, and we accepted jurisdiction over the appeal on November 5, 2007.

## DISCUSSION AND DECISION

### I. Timeliness

■ The Estate contends that its motion for summary judgment should have been granted because Womersley's claim for reimbursement and payment for the services she provided to Prickett must be "disallowed as untimely and improperly filed in the probate estate." Appellant's Br. p. 16. Specifically, the Estate maintains that the probate court's order terminating the guardianship was a final judgment and Womersley's claim must fail because she did not seek to set the judgment aside within one year for illegality, fraud, or mistake or by appealing

the order within thirty days of the judgment entry.

In support of its claim, the Estate directs us to Indiana Code section 29–3–10–1, which provides that

> (b) Upon order of the court, a guardian shall pay from the protected person's property for which the guardian is responsible any claim against the protected person's property, that the court determines has merit.

> . . .

> (d) Any person having a claim against the protected person or the protected person's property or against the guardian as such *may* file the claim with the court at any time before the claim is barred by the statute of limitations and, upon proof of the claim, procure an order for its allowance and payment from the guardianship property.

(Emphasis added).

 As set forth above, subsection (b) of the statute does not require a claim for personal services rendered in a non-fiduciary capacity to a protected person to be filed in the guardianship estate rather than in the subsequent probate estate of the deceased protected person. Thus, Womersley's claims are not precluded on this basis. We also observe that Indiana Code section 29–3–10–1(d) does not *require* a claim to be filed against the guardianship estate in light of the provision that a claim "may" be filed "with the court . . . before the claim is barred by the statute of limitations." See *Romine v. Gagle*, 782 N.E.2d 369, 380 (Ind.Ct.App.2003) (observing that the term "may" in a statute typically implies a permissive condition and a grant of discretion).

Also instructive on this issue is *Peters v. Hanlin*, 220 Ind. 175, 41 N.E.2d 604 (1942), where an individual, Mary Franks, was deemed mentally incompetent and placed under a guardianship. More specifically, Franks's sister, Ella Hanlin—who was not Franks's guardian—agreed to care for Franks. From 1935 until Franks's death in 1940, the guardian made no payments to Hanlin during the time that she cared for Franks. Following Franks's death, an estate was opened and an administrator was appointed. Hanlin filed her claim in the estate for services that she had provided to Franks. The trial court allowed Hanlin's claim. In affirming that decision, our Supreme Court determined that "approval need not be obtained nor the debt paid prior to the ward's death. If the obligation then remains unsatisfied, *it may be enforced against the ward's estate in the hands of an administrator.*" *Id.*[1] (Emphasis added).

Notwithstanding the decision in *Peters,* the Estate argues that Womersley's claim must be barred in light of this court's holding in *Williamson v. Williamson,* 714 N.E.2d 1270 (Ind.Ct.App.1999). In *Williamson,* the issue was whether a personal representative, who had been the decedent's guardian, could pay the guardian's fees from the probate estate after the guardianship was closed. *Id.* at 1274–75. Although we determined that those fees should have been paid from the guardianship estate rather than from the probate estate, we were not confronted with the propriety of paying general creditors'

---

**1.** Although *Peters* was decided prior to the adoption of our revised Guardianship Code in 1988, those statutes have not changed the long-standing rule regarding the payment of claims held by those in a non-fiduciary capacity for services rendered to a protected person or ward. *See* I.C. § 29–3–8–1 *et seq.*

claims from a decedent's estate rather than from the guardianship.

As noted above, Womersley was neither Prickett's guardian nor the personal representative of her estate. Hence, Womersley was not seeking payment as a guardian. Rather, she sought payment for personal services rendered in caring for her mother. As a result, because Womersley is a general creditor of the Estate, neither the statutes nor the holding in *Williamson* prevented Womersley from filing her claim for the services that she provided to Prickett. For these reasons, we reject the Estate's contention that Womersley's claim should be barred as untimely.

## II. Affidavits

The Estate asserts that the trial court erred in refusing to strike Chapleau and Stewart's affidavits that Womersley submitted as part of her designated evidence in opposition to the motion for summary judgment. Specifically, the Estate claims that the averments set forth in the affidavits were protected from disclosure by the attorney-client privilege. Moreover, the Estate claims that the affidavits were conclusory and contained improper opinions.

In addressing these contentions, we initially observe that the admission of evidence is entrusted to the trial court's discretion. *Washington v. State,* 784 N.E.2d 584, 587 (Ind.Ct.App.2003). Moreover, a trial court has broad discretion in refusing to grant a motion to strike. *Rausch v. Reinhold,* 716 N.E.2d 993, 999 (Ind.Ct.App.1999). Thus, we will reverse the trial court's decision only for an abuse of discretion. *Estate of Harris v. Giles,* 876 N.E.2d 1132, 1135 (Ind.Ct.App.2007). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circum-

stances before it or it misinterprets the law. *Id.*

When considering the admissibility of an affidavit at the summary judgment stage of the proceedings, we look to Trial Rule 56(E), which provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

With regard to the Estate's claim that the trial court should have granted its motion to strike the affidavits because they were in violation of the attorney-client privilege, we note that "the attorney-client privilege is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States,* 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998). Additionally, "[t]he privilege is intended to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Id.* The privilege generally excludes testimony of communications between a client and the attorney regarding the preparation of a will. *Brown v. Edwards,* 640 N.E.2d 401, 404 (Ind.Ct.App.1994). The privilege survives the death of the client. *Buuck v. Kruckeberg,* 121 Ind.App. 262, 271, 95 N.E.2d 304, 308 (1950).

The essential prerequisites to the invocation of the attorney-client privilege are to establish, by a preponderance of the evidence, the existence of an attorney-client relationship and that a confidential communication was involved. *Brown v. Katz,* 868 N.E.2d 1159, 1166 (Ind.Ct.App.2007). The burden to prove the applicability of the attorney-client privilege is on the one who asserts it. *Id.* If a communication is not involved, there is no attor-

ney-client privilege issue. *Owens v. Best Beers of Bloomington, Inc.*, 648 N.E.2d 699, 702 (Ind.Ct.App.1995). Also, because the attorney-client privilege prevents the disclosure of relevant information and impedes the quest for truth, the privilege should be narrowly construed. *Shanabarger v. State*, 798 N.E.2d 210, 215 (Ind.Ct.App.2003).

In support of its proposition that Chapleau and Stewart's affidavits should have been excluded, the Estate directs us to *Gast v. Hall*, 858 N.E.2d 154 (Ind.Ct.App. 2006), *trans. denied.* In *Gast,* the plaintiffs included an attorney's affidavit as part of their designated evidence in support of their motion for summary judgment. *Id.* at 159. The affidavit contained statements "based on things [the attorney] 'discussed' with [the decedent,] . . . how he 'instructed' [the decedent,] . . . things [the decedent] 'mentioned' to [the attorney,] . . . and [the attorney's] attempts to 'explain' [a will contest to the decedent]." *Id.* at 164. As a result, we concluded that the trial court properly excluded the attorney's affidavit based upon the attorney-client privilege. *Id.* We observed that "the plaintiffs have failed to convince us that discussing, instructing, mentioning, and explaining do not constitute communications." *Id.*

In this case, the affidavits do not reveal anything that was said by Prickett or Chapleau on the date that the Statement was executed. In other words, there is nothing in the affidavits regarding the content of any prior or subsequent conversations between Chapleau and Prickett. In fact, the only statement that even remotely approaches privileged communication is Chapleau's acknowledgment in the affidavit that he drafted the Statement based upon Prickett's instructions to him. However, this averment does not reveal any communications that cannot be discerned from the Statement itself. In short, Chapleau's

acknowledgment merely explains that he was the attorney who drafted the Statement. As a result, the Estate's argument that the affidavits should have been excluded on the grounds that it violated the attorney-client privilege fails.

■■■■ The Estate further contends that the affidavits should have been stricken "as conclusory and improper opinion." Appellant's Br. p. 25. Mere assertions that set forth conclusions of law or opinions in an affidavit will not suffice. *Comfax Corp. v. N. Am. Van Lines*, 638 N.E.2d 476, 481 (Ind.Ct.App.1994). Conclusory statements should be disregarded when determining whether to grant or deny a motion for summary judgment. *Paramo v. Edwards*, 563 N.E.2d 595, 600 (Ind.1990).

■■■■ Pursuant to Indiana Evidence Rule 701, a lay witness may testify in the form of an opinion that is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." In construing this rule, this court has held that the lay witness must set forth enough facts to permit the trial court to determine whether the opinion is based upon the witness's personal perceptions. *Ackles v. Hartford Underwriters Ins. Corp.*, 699 N.E.2d 740, 743–44 (Ind.Ct.App.1998). The amount of necessary detail lies within the trial court's discretion, and we will not reverse absent an abuse of discretion. *Id.*

In this case, the Estate argues that Chapleau and Stewart should have been precluded from opining that Prickett "was aware of what she was doing and her intentions when she executed the Statement." Appellant's Br. p. 26. However, even before the adoption of Evidence Rule 701, this court determined that lay witnesses with sufficient personal observation have been permitted to testify as to opin-

ions or conclusions concerning the mental capacity or soundness of a testator or decedent. *Farner v. Farner*, 480 N.E.2d 251 (Ind.Ct.App.1985) (will); *Guardianship of Carrico v. Bennett*, 162 Ind.App. 330, 319 N.E.2d 625, 627 (1974) (ward of a guardianship); *Healey v. Healey*, 123 Ind.App. 155, 109 N.E.2d 101 (1952) (grantor of a deed); *Buuck*, 95 N.E.2d at 304 (conveyance of real estate). In our view, the averments set forth in Chapleau and Stewart's affidavits do not reach the level of inadmissible conclusory statements or opinions. Indeed, both Chapleau and Stewart averred that they observed Prickett's demeanor, behavior, and statements when the Statement was executed. Appellant's App. p. 66. Based on these observations, Chapleau and Stewart determined that they had no concern about Prickett's mental competency. *Id.* Chapleau also stated that he prepared the Statement based on Prickett's specific instructions to him and concluded that Prickett knew what she was doing when she signed the Statement. *Id.* In light of these circumstances, it was reasonable for the trial court to admit Chapleau and Stewart's opinion testimony regarding Prickett's competency. Thus, we conclude that the trial court properly exercised its discretion in denying the Estate's motion to strike the affidavits.

### III. Summary Judgment

█ Finally, the Estate argues that it was entitled to summary judgment because there is "no evidence that Prickett requested services from Womersley." Appellant's Br. p. 6. In other words, the Estate contends that the designated evidence established that the services and expenditures that Womersley provided to Prickett were merely gratuitous and, therefore, Womersley was not entitled to any compensation as a matter of law.

When reviewing the grant or denial of summary judgment, this court views the same matters and issues that were before the trial court and follows the same process. *Estate of Taylor v. Muncie Med. Investors, L.P.*, 727 N.E.2d 466, 469 (Ind. Ct.App.2000). Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Zawistoski v. Gene B. Glick Co.*, 727 N.E.2d 790, 792 (Ind.Ct.App.2000). However, we liberally construe all facts and reasonable inferences to be drawn from those facts in favor of the non-moving party so as not to deny that party its day in court. *Boston v. GYN, Ltd.*, 785 N.E.2d 1187, 1190 (Ind.Ct. App.2003).

We also note that the trial court entered findings of fact and conclusions of law in denying the Estate's motion for summary judgment. Although we are not bound by those findings and conclusions, they aid our review by providing reasons for the trial court's decision. *Ledbetter v. Ball Mem'l Hosp.*, 724 N.E.2d 1113, 1116 (Ind. Ct.App.2000). If the trial court's entry of summary judgment can be sustained on any theory or basis in the record, we must affirm. *Id.*

█ As the Estate correctly observes, services rendered by a family member are presumed to be gratuitous. *Cole v. Cole*, 517 N.E.2d 1248, 1250 (Ind. Ct.App.1988). However, that presumption is rebuttable, in that an express contract or a contract implied in fact may be shown. *Id.* The same rule also applies where a claimant has paid bills and debts on the decedent's behalf. *Forker v. Berkes*, 111 Ind.App. 92, 38 N.E.2d 296 (1941). Additionally, this court has held that payment for services is proper when the ward had

requested the services and the services were necessary. *Wyneken v. Long,* 400 N.E.2d 1147, 1148 (Ind.Ct.App.1980).

Notwithstanding the Estate's claim that the services Womersley provided to Prickett were gratuitous as a matter of law, the Statement executed on May 9, 2000, asserts that Womersley provided care for Prickett. Appellant's App. p. 27. Moreover, the Statement sets forth Prickett's request that her guardian compensate Womersley for those services. *Id.* And the Estate has presented no evidence establishing that Prickett was incapacitated to the extent that she could not make a legally significant request.

As discussed above, Prickett expressed her intent in the May 9, 2000, Statement that Womersley be reimbursed for the services that she provided. Appellant's App. p. 66–69. Moreover, there was never a finding by the guardianship court that Prickett was mentally incapacitated. Hence, even though a guardianship had been established with regard to Prickett, nothing alters the fact that she desired Womersley to be compensated. In essence, Prickett's desire for Womersley to be paid rebuts the presumption that Womersley acted gratuitously. Thus, we conclude that the trial court properly denied the Estate's motion for summary judgment, and a genuine issue of material fact remains as to whether the services Womersley provided to Prickett were necessities.

The judgment of the trial court is affirmed and this cause is remanded for further proceedings consistent with this opinion.

DARDEN, J., and BRADFORD, J., concur.