No. 9110.

KNIGHT *v.* LEE.

SLANDER.—*Privileged Communications.*—Statements, made on application by one not a member of the church to a committeeman of a church who is investigating rumors against a member, are not privileged under the statute, R. S. 1881, sec. 497.

SAME.— *Witness.—Evidence.—Harmless Error.*—Evidence for the plaintiff having been given, that, at a certain time and place, the defendant said of the plaintiff, "She is nothing but a whore," the defendant asked a witness who was present, " Did the defendant speak these words, 'She is nothing but a whore?'" also, " What was said about the plaintiff being a whore?" These questions were excluded as leading, and the court then asked, "Was anything said about the character of the plaintiff for chastity and virtue, and if so state what was said?" To which the witness answered that he did not recollect of anything being said about her character.

*Held,* that the excluded questions were not leading, and should have been allowed; but that the error was cured by the subsequent question and answer.

SAME.—*Evidence.*—It appeared for the defence that the plaintiff's visits to his house after he became a widower were so frequent as to cause criticism, and, to rebut this, it was not error for the court, over the defendant's objection, to permit proof of a request by his deceased wife, just before her death, the defendant not being present, that the plaintiff should fix her clothing and dress her after death.

SAME.—*Damages.*—Damages in the sum of $1,000 for words charging whoredom upon a female can not be regarded as so excessive as to call for a new trial.

NEW TRIAL.—*Evidence.—Practice.*—Though it seem to the Supreme Court, with the record only before it, that a new trial should have been granted on the evidence, yet it will not reverse the judgment if there be evidence fairly tending to support the verdict.

From the Washington Circuit Court.

*D. M. Alspaugh, J. C. Lawler* and *M. B. Williams*, for appellant.

*S. B. Voyles, H. Morris* and *H. Heffren*, for appellee.

NIBLACK, J.—Suit by Mattie Lee against Andrew Knight for slander.

The complaint was in one paragraph and charged the speaking and publishing of several sets of words imputing whoredom to the plaintiff.

The defendant answered in four paragraphs:

First. In general denial.

The second and third in justification, and the fourth in mitigation of the damages.

Issue; trial by a jury; verdict for the plaintiff, assessing her damages at one thousand dollars; motion for a new trial overruled and judgment on the verdict.

Complaint is made only of the overruling of the motion for a new trial.

At the trial, one Collin McKinney, a witness for the plaintiff, testified that in a conversation held between him and the defendant and one James Kemp, at the store of the latter, late in the winter or early in the spring of the year 1880, concerning the plaintiff, the defendant said, amongst other things, "She (meaning the plaintiff) is nothing but a whore."

Robert C. Bryant, also a witness for the plaintiff, testified that in June, 1880, he had a conversation with the defendant about the plaintiff; that he was at that time an elder in the Christian Church and also a deacon; that he was not the pastor in charge, but it was his duty to look up the evidence to sustain the charges which were then pending against the plaintiff in the church; that he was endeavoring to learn from the defendant what he knew, and what he would say in regard to the plaintiff's conduct and character; that the defendant was not, however, a member of his, the witness's, church.

The defendant thereupon objected to the witness stating what he, the defendant, had said to him in that conversation

Knight *v.* Lee.

concerning the plaintiff's conduct and character, on the ground that what the defendant said on the occasion was a confidential communication, in the nature of a confession, elicited by the witness, in the course of discipline enjoined by his church. But the court overruled the defendant's objection, and permitted the witness to proceed, and to state that the defendant, on being interrogated on the subject, said he did not know anything against the plaintiff's character; that he, witness, told the defendant at the time that there was some complaint against the plaintiff by members of the church, and that he was one of a committee to look up the charges and make an investigation of the matters complained of.

It is argued here that the witness, Bryant, was not allowed by law to disclose what the defendant said in the conversation testified to by him; also, that the testimony of Bryant was injurious to the defendant, as it tended to place him in the attitude of having made inconsistent statements concerning the character of the plaintiff, and that, consequently, the court erred in permitting Bryant to disclose what the defendant said in that conversation.

The act of March 15th, 1879, which was in force at the time of the trial, and to which reference is made in the argument, provides that clergymen shall be incompetent to testify concerning confessions made to them in course of discipline enjoined by their church. Acts 1879, p. 245.

We are unable to give this act so broad a construction as is contended for by counsel, and do not think it supports the objection urged to the testimony of Bryant, set forth as above. In the first place, the testimony did not show that Bryant was acting in the capacity of a clergyman when he had the conversation with the defendant, concerning which he was permitted to testify. In the next place, the information imparted by the defendant to Bryant on that occasion can not be held to have been, in any sense, a confession within the meaning of the act above referred to.

The confessions, concerning which clergymen are incompe-

tent to testify, are, evidently, such as are penitential in their character, or as are made to clergymen in obedience to some supposed religious duty or obligation, and do not embrace communications to clergymen, however confidential, when not made in connection with or in discharge of some such supposed religious duty or obligation; or when made to them while in the discharge of duties other than those which pertain to the office of a clergyman. We are, therefore, of the opinion that the court did not err in permitting Bryant to testify, as he did, over the objection of the defendant.

James Kemp, a witness for the defendant, testified that he was present at the time referred to by McKinney in his testimony. The defendant thereupon propounded to him the following question:

"State if in the conversation at your book store, in Salem, last winter or spring, among Andrew Knight, Collin McKinney and yourself, the defendant Knight spoke these words: 'She (meaning the plaintiff) is nothing but a whore.'"

To this question the plaintiff objected, upon the ground that it was a leading question, and the court sustained the objection.

The defendant then asked the witness the further question:

"What, if anything, was said in that conversation by the defendant, Andrew Knight, about the plaintiff being a whore?"

A like objection was sustained to that question.

The court then asked the witness a question as follows:

"Was anything said in that conversation about the character of the plaintiff for chastity and virtue, and if so state what was said?"

The witness answered: "I do not recollect of anything being said about her character."

The defendant was a witness in his own behalf, and, amongst other things, made a statement of what occurred at Kemp's store at the time indicated by McKinney in his testimony. In his version of the conversation had on the occasion, no slanderous words were referred to as having been spoken by him, or any one else, in relation to the plaintiff. A question

precisely similar to the one first addressed to Kemp was propounded to him, but the court, in like manner, refused to permit him to answer it, upon the ground that it was a leading question. The court then asked him the same question it had proposed to Kemp, to which he answered: "I have already stated all of the conversation that took place at Kemp's store so far as I remember; there was nothing more or worse said than I have stated, that I recollect."

It is further argued, that the questions excluded by the court were not really leading questions, and that for that reason the court erred in refusing to permit them to be answered.

We are inclined to the opinion that these excluded questions were not, strictly speaking, leading questions, and that the court ought not to have excluded them on that ground; but, however that may have been, we think the error, if any, was cured by the questions afterwards asked, and the answers thereto elicited by the court. The questions asked by the court covered substantially the same ground that was embraced in the questions which had been held to have been too leading. As to what are, and what are not, leading questions, see the following authorities: 1 Greenleaf Evidence, sections 434, 435; *Potter* v. *Bissell,* 3 Lansing, 205; *Snyder* v. *Snyder,* 50 Ind. 492; *Harvey* v. *Osborn,* 55 Ind. 535; *De-Haven* v. *DeHaven,* 77 Ind. 236.

It is also insisted that the evidence did not sustain the verdict.

Looking at the evidence as we find it in the record, we can not resist the impression that the court below might, with great propriety, have granted a new trial in the cause, but that court had the witnesses before it, an opportunity which is not afforded us, while considering the evidence, and was hence more competent to determine all questions affecting the mere weight of the evidence than we could be with the record only before us.

There was evidence fairly tending to sustain the verdict.

We can not, therefore, say that the court below ought to have granted a new trial.

The judgment is affirmed, with costs.

## ON PETITION FOR A REHEARING.

NIBLACK, J.—It was made to appear at the trial that the appellant's first wife died in February, 1877, and that at that time the appellee was a young woman, apparently just grown.

The appellant testified that after his wife's death the appellee came to his house more frequently than before, and under circumstances sometimes disagreeable to him, and often calculated to provoke criticism as to the propriety of her visits.

Mrs. Amanda Lee, the mother of the appellee, and introduced as a rebutting witness on her behalf, testified that she was acquainted with the first wife of the appellant, and was present at the time of her death. Counsel for the appellee then asked the witness if she had a conversation with the said first wife of the appellant just before her death? The witness answered in the affirmative. She was then, also, asked by appellee's counsel, to state that conversation. Counsel on the other side inquired if the appellant was present when the conversation occurred. To this the witness answered that she did not remember whether he was or not. Thereupon the appellant's counsel objected to the witness answering the question, but the objection was overruled, and the witness answered that Mrs. Knight requested the appellee to iron and fix her underclothes, and dress her after her death. Counsel for the appellant argued in their original brief, that the court erred in permitting Mrs. Lee to answer as above, and they now complain that the question thus made by them was not ruled upon in the original opinion filed in this cause.

Upon the evidence set out as above, the appellant assigned as a cause for a new trial, that the court erred in admitting in evidence the testimony of Mrs. Lee, such testimony consisting of a conversation between her and the appellant's deceased wife, and now contends that the testimony of Mrs. Lee was

erroneously admitted, because it was not shown that he, the
appellant, was present at, or in any way a party to, the con-
versation referred to.

In the first place, the answer of Mrs. Lee did not disclose
anything amounting to a conversation between her and the
deceased wife of the appellant. It purported only to state
that the witness had heard Mrs. Knight make a request of the
appellee. The recitals, contained in the bill of exceptions con-
cerning the testimony of Mrs. Lee, do not, therefore, sustain
the allegations made in the cause for a new trial assigned upon
it. In the next place, we are unable to say that the appellant
had any reason to complain of the testimony of Mrs. Lee.
Her testimony tended to show the existence of former
pleasant, and even friendly, relations between the families of
the parties, and to afford some reason at least for a belief on the
part of the appellee that her visits to the house of the appellant
would not be unfavorably regarded by him.

The appellant, also, assigned as a cause for a new trial, that
the damages were excessive, and he now also complains that
we did not rule on that question in the original opinion. But
the question reserved by this cause for a new trial was neither
discussed nor insisted upon in the appellant's original brief.
The appellant's argument went upon the theory that the
appellee was not upon the whole case entitled to recover any-
thing, and the amount of the damages was only incidentally
mentioned in his original brief. The claim that the damages
were excessive was, therefore, impliedly waived by the appel-
lant in his argument here.

Besides, this court will not reverse a judgment rendered in
an action for slander on the ground of excessive damages,
unless the damages assessed by the jury are so outrageously
excessive as to induce the belief that the jury acted from
prejudice, partiality or corruption. *Alexander* v. *Thomas,* 25
Ind. 268.

If the appellee was entitled to recover anything in this
action, we can not say that the amount assessed was excessive.

As was intimated in the original opinion, this case is not an entirely satisfactory one to us upon the evidence, but no such error has been shown as would authorize us to reverse the judgment.

The petition for a rehearing is consequently overruled.