**William R. McCOY, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 377S225.

Supreme Court of Indiana.

Aug. 27, 1979.

 

Charles H. Scruggs, Kokomo, for appellant.

Theo. L. Sendak, Atty. Gen., Joel Schiff, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant was indicted by a Cass Circuit Court Grand Jury for second-degree murder in the shooting death of his neighbor, Max Grandstaff. He entered pleas of not guilty and not guilty by reason of insanity. He was found guilty of second-degree murder by a jury and sentenced to a term of not less than fifteen nor more than twenty-five years.

The only issue appellant raises in this appeal is whether the evidence was sufficient for the jury to find beyond a reasonable doubt that he was sane at the time the crime was committed. He raised this question in a motion for a judgment of acquittal at the close of the State's case, and again at the close of all the evidence. Both motions were overruled.

Appellant and his family resided in Lewisburg, Indiana, next door to the decedent and his family. There had been a history of problems between these families, arising from their children's inability to get along with each other. At one time, appellant McCoy and the decedent, Max Grandstaff, were employed at the same place and on occasion rode to work together. When problems arose between their children, this practice stopped, and each ordered his children to stay in their own yards and not play with the other's children.

On August 16, 1975, appellant and his son were unloading lumber from a dump truck next to their driveway. The lumber was apparently to be used to build a fence between the properties. The Grandstaffs were having a cook-out and had several friends and relatives over for that purpose. About 7:00 p. m., Max Grandstaff and some other men from the party decided to go to Logansport to get some beer. While they were gone, Jerry Grandstaff, the decedent's twelve-year old son, attempted to get his dog out of the McCoy's yard. As he was on his way back to his own yard, McCoy yelled at him and told him to get out of his yard.

When his father returned, Jerry Grandstaff told him what appellant had said. Max Grandstaff then walked toward the pile of lumber and, in a loud voice, said to McCoy, "Ray, you son-of-a-bitch, if you have anything to say, you say it to me, don't say it to my kids." Some witnesses stated that he said this more than once and continued to walk toward the lumber pile. Appellant McCoy came around the lumber pile and said, "Well, everybody is here now," and took off his T-shirt and threw it down. He then reached in his trousers, pulled out a gun and shot the decedent several times. The decedent fell forward and was later pronounced dead.

Many people from both families witnessed this incident, and appellant has never denied that he shot the decedent. This fact was stipulated to before the jury at the beginning of the trial. Appellant's only defense was that he was insane at the time of the commission of the act and, therefore, was not guilty.

Under the law applicable to this appeal, when a plea of not guilty by reason of insanity is raised, it is the burden of the State to prove beyond a reasonable doubt that the defendant was sane at the time of the commission of the act. *Downs v. State* (1977), Ind., 369 N.E.2d 1079; *Sypniewski v. State* (1977), Ind., 368 N.E.2d 1359. We review this issue as we do other questions involving sufficiency of the evidence. This Court will not weigh the evidence nor resolve questions of witness credibility, but will look only to that evidence and the reasonable inferences therefrom which support the verdict of the jury. *Sceifers v. State* (1978), Ind., 373 N.E.2d 131; *Sypniewski v. State, supra.*

The thrust of appellant's argument is that the bulk of the expert medical witnesses, testifying as court-appointed experts and defense witnesses, stated the defendant was insane at the time of the act. He argues that the State offered no evidence to refute those opinions and thus failed to carry its burden of proof.

Dr. W. R. Van DenBosch testified that it was his opinion that the appellant was insane when he shot Grandstaff. He examined the appellant on September 4, 1976, and also examined hospital and psychiatric records pertaining to appellant. According to Dr. Van DenBosch, appellant was psychotic, and was suffering from a mental defect which he diagnosed as schizophrenic reaction with a sub-classification of paranoid. He stated that this would affect the judgment of a person, and that it had in fact affected the judgment of appellant. He noted that his defect would have been particularly apparent when appellant was under severe stress. He further testified that he felt that McCoy feared Grandstaff would harm him because of the past problems McCoy and Grandstaff had had, and that McCoy believed himself to be acting in self-defense at the time of the shooting.

Dr. John Bowman, on the other hand, testified that he was not of the opinion that appellant was psychotic when he shot Grandstaff. His opinion was that the appellant was insane as the law defines it, but that he was not psychotic. He stated that, to a psychiatrist, psychosis indicates major mental illness, a break with reality. Dr. Bowman's diagnosis was that McCoy was a schizoid personality with a reactive depression. He said it affected McCoy in such a way that he became obsessed, almost to the point of a delusion, that Grandstaff was out to harm him, and that McCoy absolutely believed his neighbor intended to do him bodily harm. Dr. Bowman's opinion was based on an interview with McCoy as well as examination of medical documents and written diagnosis by a psychologist.

Dr. David Crane also testified that he did not believe appellant was psychotic. He described an interview he had with appellant on March 19, 1977, in which he did not think appellant told him everything he wanted to know. He stated that he did not have enough information to form an opinion as to McCoy's sanity. He said he examined medical records from various hospitals, but the information therein did not corroborate or refute the allegation of insanity at the time of the shooting. Dr. Crane felt appellant was consciously withholding information from him, because appellant alluded to certain portions of the sequence of events and specifically avoided other portions of that same sequence of events. Dr. Crane was of the opinion that appellant was not psychotic at the time he interviewed him; however, he had no opinion as to McCoy's sanity at the time of the shooting. He testified that McCoy told him that he carried the gun because he was anticipating trouble, and that he had previously carried a gun.

Dr. Heracleo Matheu found that appellant was psychotic at the time he examined him, but he stated that there was no way he could give an opinion as to appellant's sanity at the time of the shooting. He stated that a person could be sane at one time and insane at another. He also stated that a person can move into and out of insanity, and that, in order to determine whether a person is insane at a given time, he would have to be examined at that time. According to Dr. Matheu, neither he nor anyone else could say whether appellant was insane at the time of the shooting unless he was examined at that time or very shortly thereafter. Dr. Matheu said it was possible for appellant to be insane at one time, sane at another, and again insane at a later time. It was his opinion that appellant was insane at the time of the interview.

There was also evidence that appellant was discharged from the armed forces in 1966 because of mental problems. He had had some difficulties and went AWOL for over 100 days. At that time he was examined by army psychiatrists who determined that he was insane. The AWOL charges were, accordingly, dropped. He was, however, discharged from the service because of

this disability. He returned to Veterans Administration hospitals in 1969 and 1971, but the expert witnesses testified that these visits were not for conditions which could be determined to be indicative of insanity, but were for neurotic conditions which could be described as depression or nervous breakdown.

It is apparent that the expert witnesses disagreed in their diagnoses of appellant's condition. Two of them had no opinion as to his condition at the time of the act, and those that did have an opinion believed he was insane. However, they gave conflicting reasons for their conclusions.

Several persons from both of the families involved here, as well as other neighbors, testified about this incident. Appellant's actions and statements were described by them. One of the decedent's companions said that when Grandstaff fell to the ground, he ran to him to try to give him aid. He stated that appellant came over and asked, "Did I get him?"

We have previously held that expert testimony is not conclusive on the issue of sanity. Lay testimony, including opinion testimony, is competent evidence on this issue, as is all evidence which has a logical reference to the issue, including the defendant's sobriety and behavior on the day of the offense. *Lynn v. State* (1979), 392 N.E.2d 449; *Sceifers v. State, supra; Sypniewski v. State, supra.* The jury, as trier of fact, has the right and the duty to consider all of the evidence in arriving at its verdict. The function of the expert witness is advisory in nature. He does not state facts, but rather renders an opinion to aid the trier of fact, with whom the ultimate decision must rest. *Smith v. State* (1972), 259 Ind. 187, 285 N.E.2d 275. *See Moore v. State* (1973), 260 Ind. 154, 293 N.E.2d 28.

The State, at the time of appellant's trial, was required to prove beyond a reasonable doubt that the accused was sane at the time of the alleged offense. However, the State could accomplish this task by proving either that the accused was not suffering from a mental disease or defect, or that the accused had the substantial capacity to appreciate the wrongfulness of his conduct and was capable of conforming his conduct to the requirements of the law. *James v. State* (1976), 265 Ind. 384, 354 N.E.2d 236; *Hill v. State* (1969), 252 Ind. 601, 251 N.E.2d 429.

In the present case, we believe there was ample evidence, both expert and lay, from which the jury could have found beyond a reasonable doubt that appellant McCoy had the substantial capacity to appreciate the wrongfulness of his conduct at the time he shot Max Grandstaff, and that he was capable of conforming his conduct to the requirements of the law, or that any of the conditions which McCoy manifested did not rise to the level of a mental disease or defect. *See Lynn v. State, supra.*

The judgment of the trial court is affirmed.

All Justices concur.