**Kenneth ROBINSON, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 179S35.**

Supreme Court of Indiana.

Dec. 13, 1979.

James E. Daugherty, Merrillville, for appellant.

Theodore L. Sendak, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Kenneth Robinson was charged with two counts of kidnapping, Ind.Code § 35–42–3–2(a) (Burns 1979 Repl.), in Lake Superior Court, Criminal Division. He was tried to a jury and, on September 6, 1978, was found guilty as charged. The court sentenced him to a term of forty years for each count, to be served concurrently. Appellant raises two issues for our consideration, concerning: (1) whether the trial court erred in admitting appellant's confession into evidence; and (2) whether the evidence was sufficient to sustain the conviction.

On December 16, 1977, Shelby Swope and her daughter Sheila were abducted at gunpoint by two men wearing ski masks. The two women were taken to the basement of an abandoned house, where they were blindfolded and gagged. The kidnappers then took Mrs. Swope to a telephone and placed a call to Mrs. Swope's husband, Charles Swope, demanding ransom money. Charles Swope received two more telephone calls from the abductors, telling where and when to leave the ransom money. With the aid of law enforcement authorities, Swope cooperated with the kidnappers, and the money changed hands. In the meantime, Shelby and Sheila Swope had escaped from the house. All of the Swopes testified at trial that they never saw the faces of the kidnappers and did not have any first-hand knowledge of who had committed the crime.

On December 17, at approximately 11:00 p. m., State Police Trooper James Spiller arrested appellant Robinson on suspicion of two homicides which are not related to the kidnapping we are concerned with here. Spiller advised appellant of his constitutional rights at that time. Appellant was transported to the Gary Police Department for booking procedures at approximately 1:30 a. m. on the 18th. At 1:30 p. m. the same day, Trooper Spiller returned to the Gary Police Department to obtain information for a case report. He was informed that a Gary police officer had unsuccessfully attempted to obtain a statement from appellant Robinson concerning the homicides. Around 3:00 p. m., Spiller went into the interrogation room where appellant was being held and, after advising him of his rights, asked him a question about the homicides. Appellant stated that he had nothing to say concerning the homicides, and Spiller then left the room.

Shortly thereafter, Spiller was informed that Robinson was a possible suspect in the kidnappings in question here. Spiller and Gary Police Sergeant Brown went back into the interrogation room. Spiller again orally advised appellant Robinson of his constitutional rights, and asked him if he was involved in the kidnapping. Appellant stated that he did not wish to say anything while someone from the Gary Police Department was present. Trooper Spiller and Sergeant Brown then left the room, and Spiller returned a short time later by himself. Spiller advised Robinson of his rights again and asked him if he would give a statement regarding the kidnappings. Appellant admitted that he planned the crimes and stated that he would give a written statement. Appellant had previously agreed to take a polygraph examination with respect to the homicides he was suspected of, and the time for this examination arose before appellant was able to give the written statement about the kidnappings. Trooper Spiller was not present while the polygraph examina-

tion was administered. After completing the examination, appellant was returned to the Gary Police Department. He then signed a printed *"Miranda* waiver form" and confessed to planning and taking part in the abduction of the Swopes women. A written transcription was made of this confession, and appellant signed and acknowledged the transcribed statement.

## I.

Appellant argues that the trial court erred in overruling his motion to suppress and in admitting this confession into evidence. He urges a number of grounds as support for this assertion. First, he claims the printed waiver form does not adequately inform a suspect that he has the right to an appointed attorney prior to questioning. Second, he contends the printed form does not adequately inform a suspect that any statement he gives will be used against him in court. Finally, he urges the State did not prove this confession was given voluntarily.

The printed *"Miranda* waiver form" is a standard form used by many law enforcement agencies. This document lists separately five advisements given to a suspect before a statement is taken. Paragraph number two informs the person that he has the right to consult with an attorney of his own choice before saying anything, and that he may have an attorney present during any conversations with the police. Appellant claims a person could interpret this language to imply that he has the right to an attorney only if he can afford or already has counsel. Reading this paragraph in conjunction with the other advisements listed on the form, we do not agree. Paragraph number three specifically states that the suspect may stop the questioning and "request an attorney at any time." In addition, paragraph number five clearly advises that an attorney will be provided for the suspect if he cannot afford one. Further, the "waiver" paragraph which follows these warnings states in part: "I do not desire the services of any attorney at this time and before proceeding with the making of

any statement or during the course of any conversation with any police officers . . ." When these advisements are read together, we fail to see how one could reasonably conclude that he has the right to counsel only if he can afford or has previously retained an attorney. *See Gaddis v. State,* (1977) 267 Ind. 100, 106, 368 N.E.2d 244, 248–49. *Compare Dickerson v. State,* (1972) 257 Ind. 562, 276 N.E.2d 845. Therefore, appellant's argument is without merit.

Appellant also complains that the waiver form is defective because it does not clearly inform a suspect that his statements may incriminate him in court. Again, we refuse to accept appellant's interpretation of the language contained in the form. The suspect is informed that anything he might say "may or will" be used against him in court. Appellant claims the form should say that the statement "can and will" be used against him. The difference between the phrase used and the phrase urged by appellant is inconsequential. We think the waiver form was sufficiently informative of the possible incriminating use of appellant's statements. "This contention is patently without merit." *Davis v. United States,* (9th Cir. 1970) 425 F.2d 673, 674. *See also United States v. Grady,* (5th Cir. 1970) 423 F.2d 1091, 1093.

Appellant further argues that the State did not prove that his confession was given voluntarily. We review this question as we do other sufficiency matters. It is not the function of this Court to weigh the evidence or determine the credibility of witnesses. Rather, we determine whether there is substantial probative evidence to support the trial court's finding. *Porter v. State,* (1979) Ind., 391 N.E.2d 801, 806–07; *Richardson v. State,* (1978) Ind., 373 N.E.2d 874, 875.

At the pretrial hearing on appellant's motion to suppress, Trooper Spiller and Sergeant Brown testified for the State. Spiller testified that he advised appellant Robinson of his rights when he was arrested and each time prior to his being questioned. Spiller also read the waiver form to Robinson, and had Robinson read along with him, before the waiver was signed and the con-

fession given. Spiller and Brown each stated that they had made no promises to appellant in exchange for his confession, and did not threaten or attempt to coerce him in any way. In addition, as noted earlier, appellant Robinson signed the waiver form and acknowledged in his confession that he had been informed of and had waived his rights. Thus, we think there was sufficient probative evidence from which the trial court could have found that appellant's confession was given voluntarily.

## II.

Appellant next challenges the sufficiency of the evidence. He predicates this argument on his assertion that the confession was improperly admitted into evidence. Without this confession, he asserts, there is no evidence that appellant was one of the persons who kidnapped the Swopes. However, as discussed earlier, appellant's confession was properly admitted into evidence. "Once a confession is admitted, it is direct evidence of guilt of the criminal activity in question." *Hudson v. State*, (1978) Ind., 375 N.E.2d 195, 196. The confession of appellant clearly established his culpability and participation in the kidnapping of the Swopes, and along with the other evidence adduced at trial was sufficiently probative to support the jury's verdict.

Finding no error, we affirm the judgment of the trial court.

All Justices concur.