Michael Ray CRAIG, Appellant,

v.

STATE of Indiana, Appellee.

No. 482S145.

Supreme Court of Indiana.

Aug. 30, 1983.

Michael J. McDaniel, New Albany, for appellant.

Linley E. Pearson, Atty. Gen., Cynthia Sue Stanley, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Michael Ray Craig was found guilty of felony murder by a jury in the Clark Circuit Court on November 24, 1981. He subsequently was sentenced by the trial judge to a term of sixty years imprisonment. Appellant now directly appeals and raises the following four issues for our consideration:

1. whether the trial court erred by denying Appellant's motion to suppress his confession due to his alleged illegal detention;

2. whether the trial court erred by denying Appellant's motion to suppress his confession on involuntariness grounds;

3. whether the trial court erred by denying Appellant's motion for a mistrial based on prosecutorial misconduct; and

4. whether the trial court erred by denying Appellant's motion for appointment of an additional psychologist.

The evidence adduced at trial showed that Karl Johnson was killed on August 2, 1980, by a gunshot wound to the back of his head. Appellant gave a written confession to the police in which he admitted shooting the victim but claimed that it was an accident. Appellant confessed that he intended to rob Johnson of some money on his person but did not intend to shoot him. Other evidence showed that Appellant went to the trailer of Mary Johnson, mother of Dee and Jack Short, looking for Mrs. Johnson's husband. The victim, a stranger, accompanied Appellant to the trailer. Appellant went into the trailer's bedroom with Mary Johnson and asked: "Mary, why don't you go in there and rob that guy?" When Mary ignored him, Appellant asked if she had a gun. Mary brought out a gun and handed it to Dee Short saying that she had no shells. Dee handed the gun, a .22 caliber pistol, to Appellant, who put the gun behind his belt before leaving the bedroom. Appellant, Jack Short, and the victim subsequently left in Dee Short's car.

Appellant recounted to the police in detail the path which he and Jack Short took to a secluded area where they intended to rob Johnson. Appellant said that he never previously had handled a gun and did not know that the gun in his belt was loaded. He also said that he pointed the gun at Johnson with the intent to rob him but that Johnson moved his body and bumped the gun causing it to go off. Appellant and Jack Short then took Johnson's money and left. They also took a satchel containing some papers which Johnson carried. Appellant stated that they later went back to see if Johnson was still alive. He said that had Johnson been alive they would have called an ambulance. Johnson was dead. Appellant later assisted the police in finding the victim's satchel and the murder weapon which Appellant had hidden in his home.

I

Appellant contends that his confession to the police should have been sup-

pressed since he was illegally detained when he made the confession. Appellant admits that he went to the police station voluntarily and willingly discussed the instant crime. Specifically, he made two statements to the police denying any involvement in the instant crime prior to making the confession statement now in question. Appellant does not deny that he received his *Miranda* rights and signed waiver of rights forms before giving each of his initial two statements. He now alleges, however, that he asked to go home after making his second statement but the police refused his request. Appellant admits that someone told him that the police had reason to believe he was involved in this crime on the basis of certain statements received from other people. Detective-Sergeant Schroeder testified that he informed Appellant after his second statement that he was to be charged with Karl Johnson's murder based on Jack Short's incriminating statement. Dee Short also implicated Appellant. Donald Short, the father of Jack Short who also was charged with this murder, told Schroeder that Appellant told him that Appellant shot the victim and later returned to view the condition of the body. Schroeder stated that he also had information from Oscar Morgan that Morgan had seen the victim, Jack Short and a man Morgan believed to be Appellant together hours before the victim's body was discovered. Accordingly, Appellant's argument that the police had no probable cause to detain him following the taking of his second statement must fail. Moreover, Appellant's contention that he was held involuntarily because he requested to go home is in conflict. The police stated that they did not recall Appellant making any request to go home and that they told Appellant that he was to be charged with homicide. In fact, Appellant indicated to the police that he was giving his third and inculpatory statement because he wanted to straighten matters out. He stated that he did not commit murder because the shooting was an accident. Appellant indicated in his detailed statement that he only intended to rob the victim of his money.

The State contends that the police officers arrested Appellant with probable cause before his inculpatory third statement was given. Arrest without a warrant is legal if, at the time of the arrest, the arresting officer had probable cause to believe the defendant had committed a felony. *Funk v. State,* (1981) Ind., 427 N.E.2d 1081, *reh. denied; Battle v. State,* (1981) Ind., 415 N.E.2d 39. Probable cause exists when, at the time of arrest, the arresting officers have knowledge of facts and circumstances which would warrant a man of reasonable caution and prudence to believe that the suspect committed the criminal act in question. *Funk, supra; Battle, supra.* The facts related above show that the police had such information and therefore had probable cause to arrest Appellant without a warrant. The admissibility of a confession ultimately depends upon questions of fact which are to be resolved by the trial court. If the evidence is conflicting, only that evidence which tends to support the trial court's ruling should be considered on appeal. If the trial court's ruling is supported by substantial evidence of probative value, it will not be disturbed. *Chandler v. State,* (1981) Ind., 419 N.E.2d 142; *Ball v. State,* (1981) Ind., 419 N.E.2d 137, *reh. denied.* Since there is no showing that Appellant's inculpatory confession was given while illegally detained, the trial court correctly denied Appellant's motion to suppress the confession on this basis.

## II

Appellant's second basis for contending that his motion to suppress should have been granted is that his confession was given involuntarily. He specifically claims that the police made impermissible inducements to him and that he was in such an intoxicated state that he was unable to intelligently and knowingly make a statement. The facts presented on this issue in support of Appellant's motion to suppress are, at best, in conflict and we will not ordinarily overturn a trial court's determination as to the admissibility of a confession when that determination is based upon conflicting evidence. If the trial court's ruling

is supported by substantial evidence of probative value, it will not be disturbed. *Chandler, supra; Ball, supra.*

Appellant admits that his constitutional rights were read to him four times, that those rights included the right to have an attorney present, that he understood his rights and that he signed waiver of rights forms in each instance. Appellant now states that he asked for an attorney before he gave his inculpatory third statement. Nowhere in Appellant's transcribed statement do we find that Appellant asked for an attorney. In fact, said statement clearly indicates that Appellant was given his rights and understood them. Moreover, Officer Schroeder testified that he did not remember Appellant ever asking for an attorney. Appellant testified at the suppression hearing that approximately seven hours before making his third statement he ingested several Quaaludes, drank an eight pack of beer and smoked approximately six "joints" of marijuana. Appellant said that he had a "buzz" and was not able to give a coherent statement. Officer Schroeder testified that he saw no evidence that Appellant had been drinking; his eyes were not bloodshot nor was his speech slurred. While giving his statement, Appellant was asked by the police about his physical condition. He stated that he was tired and had a little "buzz" but had no trouble conversing with Officers Schroeder and Lutring. Schroeder stated that Appellant did not appear encumbered in any way by intoxication or drug addiction as they talked to him and that he was able to lucidly converse with them about the instant crime. The detailed and lengthy statement Appellant gave to the police indicated that he was able to speak coherently and in detail about the incidents surrounding this crime. Appellant specifically detailed how and where the crime happened and indicated that he would show the police where the gun and Johnson's satchel were.

Appellant further testified that his inculpatory statement was induced by Detective Lutring's promise to recommend Appellant to a drug rehabilitation center and to let Jack Short go free. On cross-examination, Appellant admitted that Lutring never told him that he would not be charged. Officer Schroeder testified that there were no conversations concerning Jack Short's release prior to the taking of Appellant's statement. The police, moreover, deny that there were any promises or inducements made to Appellant pertaining to himself or to Jack Short. Their testimony was that Appellant stated that he was giving his inculpatory statement because he wanted to make sure everyone understood that Johnson's death was really an accident.

There were ample facts before the trial judge to justify him in finding that Appellant's confession was given voluntarily and knowingly. It was within the trial judge's province to resolve any conflicts in the evidence and we find no reason to overturn his determination based on all of the facts and circumstances apparent here. *Chandler, supra; Ball, supra.* The trial court properly admitted Appellant's confession into evidence.

## III

Appellant next alleges that he was prejudiced by the trial court's denial of his mistrial motion. Said motion was based on alleged prosecutorial misconduct. The alleged misconduct occurred during the testimony of Jack Short, Appellant's cohort in this crime. Short gave a statement before being indicted in which he implicated Appellant. At trial, Short was called by Appellant but proved difficult because he refused to testify to anything on the grounds that he might incriminate himself. Appellant even had difficulty getting Short to give his name and current address. Appellant's trial counsel specifically asked Short if on August 2, 1980, he and his brother, Dee Short, were involved in the homicide which took place in the Newmarket area where Mr. Johnson resided. The witness refused to answer the question. Counsel continued with two questions inquiring whether Dee Short shot Mr. Johnson. The witness again refused to answer and was passed by counsel. The prosecutor next

asked the witness if he had given a statement to the State Police in which he implicated himself and Appellant in the commission of the instant robbery. Appellant's trial counsel objected and moved for a mistrial. The trial court ruled that the question was not prejudicial and denied the mistrial motion; the question was ordered struck however. Appellant did not at that time move for the jury to be admonished to disregard the statement.

Appellant now contends that the prosecutor's question amounted to evidence that there was a confession in this case which placed Appellant in such grave peril that he could not extricate himself pursuant to *Maldonado v. State,* (1976) 265 Ind. 492, 355 N.E.2d 843. Denial of a motion for mistrial of course rests largely within the sound discretion of the trial court and this Court will not reverse the trial court's decision unless it is shown that the defendant was placed in a position of grave peril to which he should not have been subjected. *Morgan v. State,* (1981) Ind., 419 N.E.2d 964; *Springer v. State,* (1979) 271 Ind. 350, 393 N.E.2d 131, *reh. denied.* We do not find that the prosecutor misconducted himself by asking the questions he did considering Appellant's direct examination questions relating to Jack Short's involvement in this crime. Since no answers were given to any of the questions posed to Jack Short, it is difficult to find that Appellant was placed in grave peril. This is particularly true since Appellant's confession fully admitting his involvement in the instant crime was already in evidence before the jury when Short was called to testify. The trial court properly overruled Appellant's mistrial motion. We find no error on this issue.

IV

Finally, Appellant claims that the trial court erred by refusing to appoint a psychologist to administer further tests to him. The trial court did appoint three psychiatrists to examine Appellant, two of whom testified during the trial. The testimonies of the psychiatrists who testified were equivocal as neither definitively concluded that Appellant was either sane or insane during the time period of the instant criminal act. Although Psychiatrist Robert Greenwood agreed with the prosecutor that there was no evidence that Appellant was insane when the instant crime was committed, he stated that Appellant could have brain damage from drug abuse. Greenwood further stated that it would be necessary to have a psychological work-up done on Appellant before he could conclusively determine whether Appellant had brain damage. Appellant moved on this basis for the appointment of a psychologist to do said work-up. The trial judge determined not to appoint any additional experts and accordingly refused to appoint a psychologist to examine Appellant. It is within the trial court's discretion to appoint experts for the defense, particularly when the request is for additional experts after some already have been appointed. *Roberts v. State,* (1978) 268 Ind. 127, 373 N.E.2d 1103. After Appellant filed his suggestion of insanity and the trial court appointed several psychiatrists to examine him, it was within the trial court's discretion to determine whether or not additional experts of Appellant's choosing would be appointed at State expense. *Norris v. State,* (1979) 271 Ind. 568, 394 N.E.2d 144, *reh. denied; Murphy v. State,* (1976) 265 Ind. 116, 352 N.E.2d 479, *reh. denied.* In view of the testimonies of the two court appointed psychiatrists, we will not say that the trial judge abused his discretion by refusing to appoint another expert witness in the person of a psychologist. We do not find the trial court's action in this regard to be reversible error.

Finding no reversible error, we affirm the trial court in all things.

GIVAN, C.J., and HUNTER, DeBRULER and PRENTICE, JJ., concur.