Rodney BONHAM, Appellant,

v.

STATE of Indiana, Appellee.

No. 53S00–9301–CR–00160.

Supreme Court of Indiana.

Dec. 15, 1994.

Mitchell P. Chabraja, Anderson, for appellant.

Pamela Carter, Atty. Gen., Julie Zandstra Frazee, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

In January of 1975, appellant was charged with Murder. However, the trial court found he was incompetent to stand trial at that time. After several competency hearings over a five year period, the court declared appellant competent to stand trial on May 20, 1980. Following a jury trial, appellant was found guilty on September 3, 1980. After first having filed a motion to correct error, appellant informed the court he did not wish to appeal. The trial court held another competency hearing and determined that appellant was competent to make such a decision.

In 1992, appellant filed a petition under Ind.Post–Conviction Rule 2 to be allowed to file a belated motion to correct error. He was permitted to file his belated motion. The court then overruled his belated motion for a new trial. This is an appeal from that ruling.

The facts are: On January 5, 1975, Ron Boothe telephoned the Bloomington Police Department to report that he had found his mother, Nora Boothe, severely beaten in her home. Although she was still alive when police arrived, she died shortly after arriving at the Bloomington Hospital emergency room. Dr. John Pless, who performed the autopsy, determined the cause of death to be a stab wound to the heart.

The evidence shows that in December of 1974, appellant and James Boothe began discussing the possibility of killing James' mother, Nora Boothe. They discussed various ways to kill her. The discussion stemmed from James' anger with his mother who prohibited him from consuming alcohol as a minor.

On January 5, 1975, appellant and James met in James' trailer and again discussed killing James' mother. At this time, appellant agreed to kill her. James agreed to drive appellant to a cemetery near the vic-

tim's home. After appellant killed the victim, he telephoned James and asked him to pick him up at the cemetery. When James arrived at the cemetery, appellant stated, "You're a free man. I killed your mother." He told James that he had killed his mother by choking and stabbing her.

■ Appellant claims he received ineffective assistance of counsel. He contends his counsel should have objected to the testimony of the Rev. Cuneio, a pastor at the Grace Baptist Temple in Bloomington where appellant's parents were members, who visited appellant in jail. During the visit, appellant told Rev. Cuneio how he had killed the victim. Appellant's counsel filed a motion to suppress this evidence on the basis that it was a privileged communication. However, the trial court overruled the motion to suppress. Appellant claims his counsel was ineffective because he failed to object during the trial when the testimony was offered. However, a search of the record indicates that counsel in fact did state an objection and referred to the overruling of his motion to suppress.

Appellant cites Ind.Code § 34–1–14–5(4), which at the time of trial read in part as follows:

"The following persons shall not be competent witnesses:

\*   \*   \*   \*   \*   \*

Fifth. Clergymen, as to confessions or admissions made to them in course of discipline enjoined by their respective churches."

However, Rev. Cuneio testified that there was no course of discipline in his church that required a formal confession of sins. Thus, the trial court was correct in overruling the motion to suppress and in overruling counsel's objection to the testimony of Rev. Cuneio. See Ball v. State (1981), 275 Ind. 617, 419 N.E.2d 137.

■ Appellant also claims his counsel was ineffective in that he failed to object to the testimony of former Detective Sergeant Donald R. Stone. Stone testified that while he was fingerprinting appellant he said that he had caused Mrs. Boothe's death but did not want to go into the whole story at that time.

He stated that he would rather not say any more until he had talked with his attorney. Detective Stone stated that he honored that request and did not have further conversation with appellant.

Assuming for the sake of argument that trial counsel did not make a proper objection to Detective Stone's testimony, an objection under the circumstances would not have prevailed and properly would have been overruled. Appellant had been advised of his *Miranda* rights prior to his conversation with Detective Stone during the fingerprinting. It was not until after he had made the statement that he had killed the victim that he stated he did not wish to talk further until he saw an attorney. With that, all questioning stopped. Appellant has failed to show ineffective counsel in this regard. *Lopez v. State* (1988), Ind., 527 N.E.2d 1119.

■ Appellant also contends his counsel was ineffective for failing to object to the testimony of James Boothe. At appellant's trial, James Boothe testified regarding his conversations with appellant prior to and immediately after the victim's death. In September of 1976, the State's case against Boothe for the murder of his mother was dismissed for lack of evidence. In that case, the trial court observed that the only evidence the State had against Boothe was the statements of Rodney Bonham, the appellant in this case. At that time, appellant had been adjudged as mentally incompetent. Thus, the court ruled his testimony was not available.

Appellant now takes the position that his incompetence is *res judicata* and since his statements were not admissible in Boothe's case, they are not admissible in his own case. Appellant takes the position that Boothe should not have been permitted to testify against him concerning what he had been told immediately before and after the crime. Appellant is correct in stating that the term *res judicata* is the term describing the situation where a judgment rendered on the merits is an absolute bar to a subsequent action between the same parties or those in privity with them on the same claim or demand,

citing *Sullivan v. American Cas. Co.* (1992), Ind., 605 N.E.2d 134.

■ However, *res judicata* does not apply here because this case is not between the same parties on the same claim. *Id.* Appellant also attempts to invoke the principle of collateral estoppel. However, as stated in *Sullivan, supra* at 137–38:

> "Generally, collateral estoppel operates to bar a subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in the subsequent lawsuit. . . .
>
> [T]he prime consideration is whether the party against whom the prior judgment is pled had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel."

At the hearing on the motion to suppress, the trial court held that there were no grounds mentioned by the trial judge in the Boothe case regarding the admissibility of evidence from Boothe. The ruling merely reflected that appellant was committed to a mental hospital, and his testimony as to his conversation with Boothe would be inadmissible. This was not an adjudication that appellant was incompetent to make the statements he made at the time he and Boothe were planning and carrying out the murder of the victim. It was merely a holding that at that time (1976) appellant was not available as a witness. In view of the fact that the testimony of Boothe concerning appellant's statements to him was admissible, we cannot say that appellant's counsel was ineffective for failure to object to that evidence.

■ Appellant claims the evidence is insufficient to support the verdict of the jury. Appellant contends that since he had been adjudicated to be incompetent to stand trial shortly after the murder had been committed, any statement he made to police immediately after the crime or the statements he made to Boothe before and immediately after the crime should be ruled inadmissible by reason of his lack of mental capacity. Both Detective Baker and Captain Hawkins testified that appellant appeared to be normal at the time they first arrested him and that there was nothing unusual in his demeanor and conduct in the hours following the murder. He was very calm and responded appropriately to the officers' questions. Officer Stone testified that at the time of booking appellant appeared "quite congenial" and "quite normal." It was only when police began to believe that appellant was a suspect in the murder of Mrs. Boothe that appellant became more emotional and nervous. However, at that time he did not appear to be irrational and appeared "likeable, like a very average young man."

Detective Troy testified that appellant appeared to understand the *Miranda* warnings. He further testified that appellant's conduct and behavior was in no way unusual or out of the ordinary. The above evidence supports the trial court's ruling that appellant's statements made immediately before and after the crime in fact were admissible. *See Nichols v. State* (1989), Ind.App., 542 N.E.2d 572; *Watson v. State* (1975), 165 Ind.App. 111, 330 N.E.2d 781.

■ Appellant claims there is insufficient evidence to prove that he was sane at the time of the offense. Appellant is correct in his observation that when a plea of insanity is raised, the burden falls upon the State to prove beyond a reasonable doubt that a defendant was sane at the time of the commission of the crime. *McCoy v. State* (1979), 271 Ind. 427, 393 N.E.2d 160.

Appellant contends that because psychiatrist Michael Johnson testified that he believed appellant lacked a "substantial capacity to conform his conduct to the requirements of the law" the jury had no choice but to find him not guilty by reason of insanity. Dr. Edward Cureton testified that appellant was suffering from paranoid schizophrenia. However, he did not directly voice an opinion as to whether at the time of the crime appellant had the ability to distinguish right from wrong.

As set out above, several lay witnesses testified that appellant appeared to be quite normal shortly before and immediately after the commission of the crime. Thus, there was a conflict of evidence on the question of

appellant's ability to form the intent to commit the crime of murder. This conflict in the evidence was for the jury to determine. *Young v. State* (1977), 266 Ind. 557, 364 N.E.2d 1180. The jury may look to all evidence bearing on the issue including the opinion of lay witnesses and the facts and circumstances surrounding the crime itself. *Owen v. State* (1980), Ind.App., 406 N.E.2d 1249. Lay testimony concerning an accused's conduct surrounding the crime may be considered together with expert testimony when determining whether a person should be held responsible for his acts. *Rogers v. State* (1987), Ind., 514 N.E.2d 1259.

■ The jury is not bound by the testimony of expert witnesses on the issue of insanity. On the contrary, "the jury may disregard psychiatric testimony that a defendant was insane and rely upon lay testimony that the defendant was sane." *Green v. State* (1984), Ind., 469 N.E.2d 1169. This Court will not invade the province of the jury and attempt to reweigh such evidence. *Young, supra.* We cannot agree with appellant that the evidence is insufficient to establish that he had the capacity to form the intent to commit the act of murder.

Appellant claims the trial court erred in refusing to give his Tendered Instructions Nos. 1, 5, and 7. His Tendered Instruction No. 1 stated that just because a charge had been filed against the defendant it was in no way to be taken by the jury as evidence of his guilt. His Tendered Instruction No. 5 concerned the credibility of the witnesses and how the jury was to evaluate that credibility. His Tendered Instruction No. 7 would have informed the jury that they were exclusive judges of the weight of the evidence and that it was their duty to consider all of the evidence in arriving at their decision.

■ Whether to give a particular instruction is within the discretion of the trial court. *Tanner v. State* (1984), Ind., 471 N.E.2d 665. In making such a decision, the trial court determines: 1) whether the tendered instruction correctly states the law; 2) whether there is evidence in the record to support the giving of the instruction, and 3) whether the substance of the instruction is covered by other instructions. *Banks v.*

*State* (1991), Ind., 567 N.E.2d 1126; *Boyd v. State* (1991), Ind., 564 N.E.2d 519. Jury instructions are not to be considered in isolation but as a whole and with reference to each other. *Reinbold v. State* (1990), Ind., 555 N.E.2d 463.

■ Appellant's Tendered Instructions 1 and 5 were given verbatim as Preliminary Instructions 5 and 8. The first sentence in appellant's Tendered Instruction 7 was given as Preliminary Instruction No. 9. The balance of the Tendered Instruction was given in the court's other preliminary and final instructions regarding the defendant's presumption of innocence and the State's burden to establish each element of the charged crime as well as defendant's sanity beyond a reasonable doubt. Thus, the substance of the tendered instructions was substantially covered by the other instructions given by the court. The court did not err in refusing appellant's tendered instructions. *Mack v. State* (1983), Ind., 457 N.E.2d 200; *Smith v. State* (1968), 250 Ind. 125, 235 N.E.2d 177.

■ Appellant further claims, however, that the trial court erred by not repeating his preliminary instructions along with his final instructions. We have held previously that both preliminary and final instructions are not to be considered in isolation but as a whole and with reference to each other. *See Ruetz v. State* (1978), 268 Ind. 42, 373 N.E.2d 152, *cert. denied,* 439 U.S. 897, 99 S.Ct. 261, 58 L.E.2d 245. In the case at bar, the jury was instructed that they were to construe every instruction in connection with and in light of every other instruction given. The jury is presumed to have followed this instruction. *Duncanson v. State* (1987), Ind., 509 N.E.2d 182. The trial court did not err in refusing appellant's tendered instructions.

■ Appellant contends the trial court erred in failing to properly inquire into the ability of a juror to hear and comprehend the proceedings. Juror Walter Michael Petroskey had a hearing impairment. Appellant bases his allegation on the fact that during the polling of the jury after the trial, Juror Petroskey gave inappropriate answers to the judge's questions. Counsel further observed that during the trial he noticed that Juror Petroskey was leaning his head on his hand, seeming sometimes to be cupping his ear.

Although these facts do not appear in the record, assuming *arguendo* that defense counsel's assertions are true, Mr. Petroskey had indicated his hearing difficulty on the juror questionnaire and was questioned on this matter during *voir dire.* Notwithstanding this disability, Mr. Petroskey was accepted by defense counsel for service on the panel. He is in no position at this juncture to raise the question which was clearly available to him during *voir dire.*

Appellant claims his counsel was ineffective for failure to inquire into his mental condition and medication during trial. Appellant claims counsel made no inquiry *on the record* as to his client's condition during trial or whether he was medicated during trial. There is nothing to indicate that trial counsel did not in fact make such inquiry of his client or of the officials who had his client in custody. There is no indication from this record, nor does appellant claim, that he was incapacitated during the trial. There is nothing in this record to justify declaring trial counsel ineffective because of his client's condition resulting from either natural causes or medication.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and SULLIVAN, JJ., concur.